KANSAS CITY SOUTHERN RAILWAY COMPANY *v.* SPARKS.

Opinion delivered May 24, 1920.

1. APPEAL AND ERROR—VERDICT SUPPORTED BY SUBSTANTIAL EVIDENCE. —While it is the duty of the trial court to set aside a verdict which in its opinion is contrary to the weight of the evidence, such verdict will be upheld on appeal if there is any substantial evidence to support it.

2. MASTER AND SERVANT—NEGLIGENCE OF MASTER—EVIDENCE.—In an action by a track laborer for personal injuries evidence that such injuries were caused by the negligence of the master's foreman in striking a cleaver held by plaintiff and causing a rail to fall on plaintiff's ankle *held* sufficient to sustain a finding for plaintiff.

3. MASTER AND SERVANT—EMPLOYERS' LIABILITY ACT—ASSUMED RISK. —The Federal Employers' Liability Act having expressly eliminated the defense of assumption of risks in certain specified cases, the intent of Congress is plain that in all other cases such assumption shall have its former effect in an action by the injured employee.

4. MASTER AND SERVANT—ASSUMED RISK.—While a servant assumes the risk of all dangers incident to the employment, and from the manner in which he knowingly sees and observes that the work is being done, a track laborer did not, as a matter of law, assume the risk of the foreman's negligence in striking a cleaver held by the laborer and causing a rail to fall on his foot.

5. MASTER AND SERVANT — CONTRIBUTORY NEGLIGENCE.—Under the Federal Employers' Liability Act, where the causal negligence is attributable partly to the master and partly to the injured servant, the latter shall not recover full damages, but only diminished sum bearing the same relation to the full damages that the negligence attributable to the master bears to the negligence attributable to both.

6. APPEAL AND ERROR—INSTRUCTION—GENERAL OBJECTION.—A general objection to a lengthy instruction is insufficient to call attention to a particular part of the instruction.

7. TRIAL—MODIFICATION OF INSTRUCTION.—Where plaintiff, a track laborer, injured when a rail turned over on his foot, claimed that his foreman caused the injury by striking a cleaver, and defendant claimed that plaintiff struck the cleaver, it was not error, where defendant requested an instruction to find for itself if the laborer struck the cleaver, to insert "negligently" before the word "struck."

8. APPEAL AND ERROR—REVIEW OF EVIDENCE.—In testing the sufficiency of the evidence to support the verdict, the court must view the facts in the light most favorable to appellee.

9. MASTER AND SERVANT—INSTRUCTION.—In an action by a servant based on the Federal Employers' Liability Act, providing that contributory negligence shall not bar a recovery, but that the damages shall be diminished in proportion to the amount of negligence attributable to such employee, an instruction that if the servant and master were both guilty of negligence damages should be diminished in proportion to the amount of negilgence attributable to the servant as the proximate cause of the injury was not erroneous when construed with another instruction to the effect that if the master and servant were both negligent the damages should be diminished in proportion to the amount of the servant's negligence.

Appeal from Polk Circuit Court; *George R. Haynie,* Judge; affirmed.

### STATEMENT OF FACTS.

C. C. Sparks brought this suit against the Kansas City Southern Railway Company and Walker D. Hines, Director General of Railroads, under the Federal Employers' Liability Act to recover for personal injuries sustained by him while engaged in the work of track repairing. At the time Sparks was injured, with other servants of the railroad company, he was engaged in taking up old rails from the track and laying new rails. During the progress of the work it became necessary to make a connection to let a train over. The rails were fastened together with fish plates, or angle bars. In order to make the connection it was necessary to disconnect the old rails and to connect the old rail with the new rail. In order to disconnect the old rails they cut the bolts out of the joints where they were fastened with the angle bar.

According to the testimony of the plaintiff, Sparks, he had a hammer and J. W. Ross, the foreman, had the cleaver. Ross was holding the cleaver and the plaintiff would hit it and cut the nuts off of the bolts. The plaintiff then knocked the bolts out of the rail. He then hit the angle bar two or three times with the hammer, but it was rusty and would not come loose. Ross, who was standing on the outside of the track, then took the hammer and hit the outside angle bar a lick or two and it

then became loose. The cleaver was lying there and the plaintiff picked it up. He put the cleaver in between the angle bar and the rail to prize the angle bar loose. He could not prize it loose. Ross then struck the cleaver with the hammer. This knocked the angle bar loose. The rail then rolled over striking the plaintiff's left ankle and foot and injured it severely.

According to the testimony of J. W. Ross he did not use the hammer. He was holding the cleaver and the plaintiff was striking with the hammer. There was a certain place to stand where there was no danger of getting hurt. He had instructed plaintiff where to stand so that he would not get injured. The plaintiff did not stand in the place designated. It seemed to be wrong handed for the plaintiff and he shifted his position. If plaintiff had stood where the witness told him to stand the angle bar would not have hit him. Other facts will be stated or referred to in the opinion.

The jury returned a verdict for the plaintiff and the defendant has appealed.

*James B. McDonough,* for appellant.

1.   The verdict is aginst the weight of the evidence and should be set aside. 126 Ark. 427; 133 *Id.* 166; *Ib.* 45.

2.   Plaintiff assumed the risk as a matter of law and can not recover. 233 U. S. 492; 238 *Id.* 510; 240 *Id.* 466; 241 *Id.* 313, 476; 245 *Id.* 445. The undisputed facts show that there was danger and that plaintiff knew of it. 79 Ark. 608; 118 *Id.* 304; 171 Pac. 1; 207 S. W. 543, 554; 174 Pac. 1139; 175 *Id.* 105; 204 S. W. 961; 96 S. E. 253; 210 S. W. 1049; 95 S. E. 925; 201 S. W. 357; 166 N. W. 735; 102 Atl. 661. See, also, as to assumption of risk under the Federal act. 188 S. W. 817; 197 *Id.* 464; 241 U. S. 229; 91 S. E. 898; 92 *Id.* 973; 241 U. S. 237; 159 N. W. 543; 179 S. W. 422; 91 S. E. 52; 189 S. W. 25; 188 *Id.* 880; 194 *Id.* 558; 155 N. W. 208; 93 S. E. 321; 165 Pac. 96.

3.   The court erred in giving instruction No. 1 for plaintiff. 110 Ark. 188. The issue was not raised by the pleadings. 85 *Id.* 322; 87 *Id.* 243; 89 *Id.* 147; 96 *Id.* 206;

82 *Id.* 47. It submits also a conflicting theory as to negligence.

4. The court erred also in giving instruction No. 2 for plaintiff. It does not correctly state the measure of damages under the Federal act. 229 U. S. 114.

5. Instruction No. 5 was also erroneous. Cases *supra.*

6. The argument of plaintiff's counsel for plaintiff was misleading and prejudicial. 80 Ark. 292.

7. It was error to refuse instruction No. 2 for defendant. 80 Ark. 147; 77 *Id.* 201. The court also erred in refusing the other instructions requested by defendant. 74 Ark. 468; 64 *Id.* 332; 82 *Id.* 76; 104 *Id.* 59; 110 *Id.* 567. The instructions were confusing and do not correctly declare the Federal law.

*Norwood & Alley,* for appellee.

1. The verdict is not against the weight of the evidence. The authorities cited by appellant are really aganist his contention. 126 Ark. 437; 47 *Id.* 562.

2. The verdict is sustained by a clear preponderance of the evidence. Kirby's Digest, § 6140; 94 Ark. 365; 29 *Id.* 330; 59 *Id.* 215; 62 *Id.* 434.

3. Plaintiff did not assume the risk. 134 Ark. 136; 4 Labatt on Master and S. (2 ed.), p. 3965.

4. There was no error in the instructions, but where the verdict and judgment are right they should not be disturbed on the facts for mere errors in the instructions. 89 Ark. 154; 54 *Id.* 236; 133 *Id.* 28; 131 *Id.* 547.

Hart, J. (after stating the facts). It is earnestly insisted by counsel for the defendant that the judgment should be reversed because the verdict of the jury is contrary to the weight of the evidence. In making this contention counsel has not taken into consideration the distinction between the rules which govern trial courts and this court with respect to setting aside verdicts. It is the duty of the trial court to set aside a verdict which it is of the opinion is contrary to the weight of the evi-

dence, but this court has repeatedly held, that where the trial court has overruled a motion for a new trial based upon the insufficiency of the evidence, and where there is any substantial evidence to support it, the verdict of the trial court will be upheld on appeal. *St. L. S. W. Ry. Co.* v. *Ellenwood,* 123 Ark. 428.

In the present case the trial court overruled the motion for a new trial, and his ruling in that respect was tantamount to a finding that the verdict was not against the preponderance of the evidence. There is nothing to indicate that he acted arbitrarily in making such finding, and no remarks of the trial court appear in the record to bring the present case within the rule announced in *Twist* v. *Mullinix,* 126 Ark. 427, as insisted by counsel for the defendant.

This brings us to a consideration of the question of whether there was any evidence legally sufficient to support the verdict.

According to the testimony of the plaintiff, he was holding the cleaver between the angle bar and the rail trying to pry them apart when the defendant's foreman suddenly struck the cleaver with a sledge hammer, knocking the angle bar and rail apart so that the rail fell on his foot and severely injured him.

The court instructed the jury that if it should find from a preponderance of the evidence that the cleaver was placed at the end of the angle bar and that the foreman negligently struck the cleaver with the sledge hammer, thereby injuring the plaintiff, and if it should further find that the plaintiff at the time was exercising ordinary care, the verdict should be for the plaintiff. No objection is made to this instruction.

The evidence, if believed by the jury, was sufficient to warrant the jury in finding for him, but it is earnestly insisted that the court should have told the jury, as a matter of law, that the plaintiff assumed the risk. This action was brought under the Federal Employers' Liability Act.

In the case of *Seaboard Air Line Railway* v. *Horton*, 233 U. S. 492, the court held that, the Federal Employers' Liability Act having expressly eliminated the defense of assumption of risk in certain specified cases, the intent of Congress is plain that in all other cases such assumption shall have its former effect as a bar to an action by the injured employee.

According to the plaintiff's testimony, the foreman suddenly struck the cleaver with the sledge hammer, thereby causing the injury. The work was not so obviously dangerous that an ordinarily prudent person under the circumstances would not have engaged in it. The servant assumes the risks of all dangers that are incident to the employment, and he can not recover for injuries which result to him therefrom. He also assumes the risk of injury from the manner in which he knowingly sees and observes that the work is being done. It can not be said, however, that, under the undisputed proof as declared by the record, plaintiff's injury resulted from one of the risks incident to his employment, or that the danger was so obvious and imminent that no ordinarily prudent person under the circumstances would have engaged in the work. It is also insisted that the court erred in giving instruction No. 1. It is as follows:

"If you find in this case that the foreman, J. W. Ross, placed the cleaver in the crack between the angle bar and the rail and that the plaintiff, with due care for his own safety, struck the cleaver with a hammer and this lick caused the rail and angle bar to spring loose and injure the plaintiff, if you so find from the evidence, and you further find from the evidence in this connection that the foreman Ross instructed or directed the plaintiff to strike the cleaver, and at the time that he, Ross, knew where the plaintiff was standing, and by the use ordinary care on his part might or could have known, that the plaintiff was standing in a place of danger, then it was the duty of the foreman to apprise the plaintiff of the fact that he was in a dangerous place, and if you

find he failed to do this, but directed the plaintiff to strike the cleaver, and the plaintiff did so, and was not negligent in obeying said instructions, and you find this act of the said foreman was a negligent act on his part, and this negligence was the cause of the injury, then, in that event, if you so find, you will not diminish the amount of plaintiff's recovery, in case he does recover, on account of the fact that he struck the cleaver and that this lick caused the rail to spring over and against the plaintiff, unless you further find that the foreman and plaintiff were both negligent, and in that event you will diminish plaintiff's recovery of damages in proportion to the amount of his negligence, in case you find damages in his favor.''

According to the testimony of the plaintiff, the foreman struck the cleaver at the time the plaintiff was injured. On the other hand, according to the testimony of the foreman, he did not strike the cleaver at that time. He said that he instructed the plaintiff where to stand, and that the plaintiff was using the hammer at the time he was injured. The foreman was present and working with the plaintiff. He knew the position the plaintiff assumed in doing the work. It is true he said that he had instructed the plaintiff where to stand while using the hammer. The jury might have inferred, however, from the foreman's testimony that he knew the plaintiff was in a dangerous place and that he again apprised him of his danger in using the hammer at the place where he was standing. This instruction and No. 2 immediately following it deals with the question of the reduction of damages under the Federal Employers' Liability Act.

Instruction No. 2 is as follows:

''You are instructed that if you find by a preponderance of the evidence that the plaintiff was injured, as alleged, while in such employ of the defendant, and that the proximate cause of his injury was the negligence of the defendant, or its employees, at the time, your verdict will be for the plaintiff. On the other hand, if you find from the evidence that the plaintiff and defendant were

both negligent, and that the negligence of both the plaintiff and defendant caused the injury, you will diminish the damages found in favor of the plaintiff in case you find damages in his favor in proportion to the amount of negligence you find attributable to plaintiff as the proximate cause of the injury.''

The Federal statute provides that the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by a jury in proportion to the amount of negligence attributable to such employee.

The Supreme Court of the United States has held that where the casual negligence is attributable partly to the master and partly to the injured servant, the latter shall not recover full damages, but only a diminished sum bearing the same relation to the full damages that the negligence attributable to the master bears to the negligence attributable to both; the purpose being to exclude from the recovery a proportionate part of the damages corresponding to the employee's contribution to the total negligence. *Seaboard Air Line Railway* v. *Tilghman,* 237 U. S. 499.

This principle was given by the trial court, and it was the evident purpose to advise the jury as prescribed by the statute in their determination of the amount of damages.

The instructions complained of are too lengthy and are somewhat involved.

Counsel for the defendant only saved a general exception to the instructions. If he had any objection to a particular part as misleading, he should have called the court's special attention to that part, so that the court might modify or explain the words used. Not having done so, he is not now in an attitude to complain.

Counsel for the defendant also asks for a reversal of the judgment because the court modified instruction No. 2 asked by it by adding the word ''negligently'' between the words, ''himself and strike the cleaver.'' The instruction as asked by the defendant is as follows:

"Plaintiff alleges in the first paragraph of his complaint that he was in the employ of the Director General of Railroads on the 17th day of February, 1919, and was working in an extra gang, and was at the time engaged in removing the steel rails, which steel rails were to be replaced with new steel rails. He further alleges that while engaged in this service under the instructions of the foreman in charge of the work he received great and permanent injuries because of the negligence of the foreman. He alleges that he had placed an iron cleaver at the end of an angle bar and that J. W. Ross, foreman of the gang, struck the cleaver with a sledge hammer and thereby caused the injury to the plaintiff. If the jury find from the evidence that the plaintiff himself struck the cleaver and that the foreman did not strike the cleaver, the jury will find for the defendant."

The court was right in inserting the word "negligently." The instruction as asked by the defendant was peremptory in its nature and exempted the defendant from liability if the plaintiff himself struck the cleaver regardless of whether his act in so doing was negligent or not. Other instructions asked by the defendant bear this same vice, and if given would have been, in effect, a peremptory instruction to find for the defendant. Therefore, the court did not err in refusing to give them.

We find no prejudicial error in the record, and the judgment will be affirmed.

### OPINION ON REHEARING.

HART, J. It is earnestly insisted by counsel for appellant that the court erred in not holding as a matter of law that appellee assumed the risk, and in support of his contention states that the court has misunderstood the facts.

It is well settled that in testing the sufficiency of the evidence to support the verdict the court must view the facts in the light most favorable to appellee.

Counsel for appellant in making his contention that the court misunderstood the facts only takes into consideration the evidence adduced in behalf of appellant.

He does not take into consideration at all the fact that appellee's own testimony flatly contradicts the testimony of the witnesses for appellant. It will be remembered that appellant's foreman testified that he did not strike the cleaver at all at the time appellee was injured. He says that he was holding the cleaver and that appellee was striking with the hammer; that he told appellee where to stand in order to keep from being hurt in the event the rail flew back after the angle bar was removed from it; that the appellee was hurt by reason of quickly stepping from a place of safety to a place of danger before he could be notified not to do this by the foreman.

On the other hand, this testimony of the foreman and that of other witnesses who corroborated his testimony is flatly contradicted by the testimony of appellee himself. It will be remembered that the foreman and his crew were engaged in removing an old rail from the track at the time appellee was injured. We quote from the record of appellee's testimony the following:

"Q. Now, what were you doing to the rail?

"A. Disconnecting it at the joint.

"Q. Now, go ahead in your own way and explain to the jury how you did that?

"A. I had the hammer at the time, and Mr. Ross had the cleaver, and he was holding it and cut the nuts off of the bolts. I just knocked the bolts out of the rail that was holding the angle bars. I hit the angle bar two or three times with the hammer, and it wouldn't come loose. Mr. Ross says, 'Let me have the hammer.' He was standing on the outside of the track. After I struck two or three licks with the hammer myself, then I gave him the hammer, and he hit the outside angle bar a lick or two, and it came loose. The cleaver was lying there, and I picked it up and, like the rail was there, I was standing sort of in here, and they connected there, and this inside angle bar was still fastened. The cleaver was lying there, and I picked it up and twisted it, and I jumped back in

there, and as I did that Mr. Ross raised the hammer and hit the cleaver.

"Q.   What happened then?

"A.   The rail sprung the angle bar out, and the rail caught me just a little above the ankle."

Continuing, appellee stated that the angle bar was between twenty-eight and thirty-six inches long, and that there would be half of that distance projecting beyond the end of the rail; that the angle bar attached to the rail was what struck his leg, and that he did not know that the angle bar was fastened to the rail.

Continuing, appellee said: "I picked up the cleaver and, using it myself, I struck that way in between the angle bar and flange of the rail. I twisted it and the cleaver jumped out and then I stuck it back in there again at the same place, and at the time I done that Mr. Ross was standing outside the rail with the hammer in his hand and he raised the hammer and struck the cleaver on the head and drove it in between the angle bar and flange of the rail. That sprung the angle bar out from the rail, and then the rail jumped across and caught me.

"Q.   When you were working with the cleaver in the crack there yourself was you trying to ease it loose or get it loose without a sudden lick that would spring it?

"A.   That couldn't hardly be, only I stuck the cleaver in there with the intention after I got it in there and sprung it out the angle bar would come out and it would leave the rail loose.

"Q.   You thought it would drop loose from both rails, did you?

"A.   I had an idea it would. I didn't know it was fastened on the other end of the rail.

"Q.   You didn't know it was fastened to the rail that did spring over?

"A.   No, sir; I did not.

"Q.   I will ask you when the lick was struck if it sprang over suddenly before you could get away from it?

"A.   It did."

The witness described the cleaver as a tool with a handle in it. One end is broad like a chisel, and the other is blunt like a hammer. The cleaver proper was something like six or eight inches long, and the handle was about two feet long. The sledge hammer that was used in striking the cleaver weighed at least twelve pounds. Again, appellee stated that he was working on the inside of the rail and the foreman on the outside at the time he was injured. He said that he was trying to prize the angle bar loose with the cleaver at the time he was injured, and did not know that the foreman was going to hit the cleaver; that he was beyond the reach of the rail, and the angle bar stuck out far enough to hit him when the rail flew back; that he did not know that. He expected the angle bar to drop down when he prized it loose from the rail and did not know that the foreman was going to strike the cleaver until after he had done so. Thus it will be seen that appellee's testimony is in irreconcilable conflict with the testimony of the witnesses for appellant.

According to the testimony of appellee, he thought he could prize the angle bar loose from the rail with the cleaver or chisel and when he had done so the angle bar would drop down to the ground. He stood in a position where he could be out of the reach of the rail itself when it sprung back. He did not know that the foreman was going to strike the cleaver with the sledge hammer. The formean struck the cleaver suddenly with the sledge hammer and thereby caused one end of the angle bar to become loose. The other end adhered to the rail, striking appellant on the ankle before he could get out of reach of the angle bar. The act of the foreman in striking the cleaver suddenly with the sledge hammer without warning to appellee was the proximate cause of the injury. Therefore, appellee's own testimony made a case for the jury, and the court did not err in submitting the question of assumption of risk to the jury. In this view of the matter, it is not necessary to set out in detail the

testimony of appellant; for it is readily apparent that the witnesses for appellant were contradicted by the testimony of appellee himself.

Again, counsel criticises the opinion of the court for saying in the original opinion that no objection was made to the instruction of the trial court on the question of negligence. Counsel points out that he made objections to the action of the trial court in giving it. What the court meant to say was that counsel did not argue in his brief that the instruction on the question of negligence was erroneous. We do not understand counsel to contend that the instruction given by the court on the question of negligence was erroneous. It is perfectly apparent, however, that if there is testimony sufficient to warrant the submission of the question to the jury, there is no error in the form of the instruction. It plainly submits to the jury appellee's theory of the case and makes the negligence of appellant depend upon the truth of appellee's testimony.

Again, counsel criticises the opinion of the court with regard to the instructions given on the measure of damages. Counsel insist that the court erred in saying that he did not make specific objections to these instructions. If it be assumed that his objections to the instructions amounted to a specific objection to them, still we do not think that the action of the court in giving the instructions was reversible error.

The Federal statute is that "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be determined by the jury in proportion to the amount of negligence attributable to such employee." The two instructions on the measure of damages set out in our original opinion should be read together. In the latter part of instruction two, the court told the jury that, if it should find from the evidence that the plaintiff and defendant were both guilty of negligence which caused the injury, the damages found in favor of the plaintiff should be

diminished in proportion to the amount of negligence attributable to the plaintiff as the proximate cause of the injury. The idea meant to be conveyed was that if the plaintiff had contributed to his own injury by his own negligence, the diminution in the damages should be in proportion to the amount of his negligence. We think the court had reference to the rule of proportion specified in the statute, and that the instructions, when read together, gave the jury the correct principle of law with reference to the exoneration of the carrier, and made it liable only for a proportionate part of the damages corresponding to the amount of the negilgence attributable to the employee. *Norfolk & Western Ry. Co.* v. *Earnest,* 229 U. S. 114. Therefore, there was no prejudicial error in giving the instruction.

We have examined the record and find no prejudicial error in it. Therefore the motion for rehearing will be denied.