PHILLIPS PETROLEUM COMPANY *v.* JENKINS.

4-3830

Opinion delivered May 6, 1935.

*Marsh & Marsh, Mahony & Yocum,* and *R. L. Foster,* for appellant.

*J. V. Spencer* and *L. B. Smead,* for appellee.

BUTLER, J. The plaintiff, R. O. Jenkins, brought suit in the Union Circuit Court against the defendants, Joe H. Myers and the Phillips Petroleum Company for damages for personal injuries. He alleged that he and Joe H. Myers were employed by the Phillips Petroleum Company, and that, while acting in the line of duty and performing work for the company, he was injured on account of the negligence of the said Myers who was assisting him; that Myers was a resident of Union County, Arkansas, and that Phillips Petroleum Company is a foreign corporation. Damages were laid in the sum of $75,000.

In apt time the petroleum company filed its petition for removal of the cause to the Federal court. This peti-

tion was overruled, and subsequently the company filed an amended petition, which was also overruled and denied. The original and amended petitions, while not denying that Joe H. Myers was in the employ of the petroleum company and assisting plaintiff in his work at the time of his injury, alleged that the charges of negligence against the defendant, all being specifically repeated, were "wrongfully and fraudulently made for the purpose of defeating the jurisdiction of the United States District Court for the Western District of Arkansas, El Dorado Division." It was further alleged that "plaintiff and the defendant, Joe H. Myers, are residents and citizens of the State of Arkansas, and this defendant, Phillips Petroleum Company, is a resident and citizen of the State of Delaware, and the defendant, Joe H. Myers, is wrongfully and fraudulently made a party defendant in this action for the purpose of preventing a removal of this case by the defendant, Phillips Petroleum Company, from the court in which it was filed to the district court of the United States for the Western District of Arkansas, El Dorado Division, and this cause involves a separable controversy."

The petition for removal falls squarely within the rule announced in *Chesapeake & Ohio Ry. Co.* v. *Cockrell*, 232 U. S. 146, 34 S. Ct. 238, and *C., R. I. & P. Ry. Co.* v. *Whiteaker*, 239 U. S. 421, 36 S. Ct. 152. "It is not enough," said the court in the last case cited, "to assert that there was a fraudulent joinder of defendants, but there must be 'a statement of facts rightfully engendering that conclusion,' and that 'merely to traverse the allegations upon which the liability of the resident defendant is rested or to apply the epithet "fraudulent" to the joinder will not suffice; the showing must be such as compels the conclusion that the joinder is without right and made in bad faith.' And 'it is not such,' it was said, 'unless it was without any reasonable basis'." The trial court therefore properly denied the petition for removal.

Thereafter the petroleum company filed its separate answer denying the allegations of negligence in the complaint and pleading, as an affirmative defense, that plain-

tiff assumed the risks of his employment. Joe H. Myers also answered, adopting the separate answer of the petroleum company as his own. The case proceeded to trial upon the issues joined and the evidence adduced. There was a verdict and judgment in favor of plaintiff in the sum of $50,000, from which is this appeal.

The petroleum company, in its motion for a new trial, filed approximately sixty-four days after the return of the verdict, raised the question of the constitutionality of § 7137 of Crawford & Moses' Digest, upon which the liability of the petroleum company is predicated. This section abrogates the fellow-servant law in so far as it applies to corporations, and creates liability as to them for injury to employees caused by negligence of fellow-servants. The contention that said act is unconstitutional is one of the grounds urged for a reversal of the judgment. It is the contention of the appellee that this question was waived by the failure of the defendant in the court below to interpose this defense by demurrer, answer, or other appropriate plea. We pass this contention for the reason that this court, in numerous decisions for a period of more than twenty-five years, has upheld the constitutionality of § 7137, *supra,* the latest expression being in the case of *Postal Tel. Cable Co. v. White, ante* p. 365.

At the conclusion of the testimony, the defendant moved for a directed verdict on the ground that there was no substantial evidence to sustain the allegation of the complaint as to the negligence of Joe H. Myers. This is the main ground urged for reversal.

The evidence relative to the circumstances out of which the negligence of Joe H. Myers is said to have arisen is in sharp and irreconcilable conflict. That adduced on behalf of the plaintiff tends to establish the following facts: on the date of the injury, plaintiff and Joe H. Myers, his fellow-servant, were engaged in carrying sections of 2½-inch pipe from 31 to 32 feet long of an estimated weight of 250 pounds, plaintiff carrying the front end on his right shoulder and Myers carrying the rear end on his right shoulder. The territory where this work was being done was low and swampy with a good

many stumps, and it was necessary for them to walk carefully to avoid the soft ground, stumps and water. They had used the route over which they were carrying the pipe at the time of the accident in carrying other pipe, either that day or a few days before. A depression was in the way about five feet long and eighteen inches deep and wide. As plaintiff was in the act of stepping across this depression he felt a forward jerk of the pipe on his shoulder immediately followed by a backward movement of the pipe causing him to lose his balance and to fall into the hole or ditch, his end of the pipe falling upon him. When he fell, he looked back and saw Myers holding the pipe in the crook of his left arm. From the movement of the pipe on plaintiff's shoulder and its situation when he looked back after he fell he stated that the jerks he experienced which caused him to fall were occasioned by Myers in attempting to change the pipe from his right to his left shoulder; that this was done with no notice or warning to plaintiff. Myers testified that there was no hole or ditch in the path along which they were walking, and that he was not carrying the pipe on his right, but on his left, shoulder, and that he did not move or jerk the pipe as they were walking along. He said plaintiff's fall was occasioned because the earth gave away under plaintiff's foot; that there was no hole until the ground caved in when plaintiff stepped upon it; that this made a pretty good sized hole—about two feet around.

It is first argued that the sudden jerk of pipe, alleged by plaintiff to have caused the accident, was caused not by any movement of the same on the part of Myers, but because of the unevenness of the path, making it necessary at times to take either longer or shorter steps to avoid pools of water, stumps, etc. This argument, however, is not based upon any evidence. Myers did not so testify, but, on the contrary, stated that there was no unusual movement or shifting of the pipe at all, and that the plaintiff's fall was occasioned solely because of the ground caving in under his footsteps.

It is next insisted that, as plaintiff's back was toward Myers so that he could not actually see what movement of the pipe Myers made, if any, (which fact he admitted),

his statement that Myers shifted the load from his right to his left shoulder was a mere supposition, and therefore there was no evidence to justify the conclusion that the pipe was shifted in the manner stated by plaintiff. We are of the opinion, however, judging from the movement of the pipe as described by plaintiff, and its situation immediately after he had fallen that the inference is justified that there was some unusual movement of the pipe made by Myers as he was carrying his end, that a shift of the load from one shoulder to the other would probably have occasioned the jerks felt by the plaintiff. The jury were doubtless men experienced in the ordinary affairs of life, and from the facts related as to the movement of the pipe on plaintiff's shoulder could fairly deduce the cause thereof and reach the conclusion that plaintiff's theory was correct.

It is next contended that, even though Myers might have shifted the pipe, as contended by plaintiff, this would not constitute negligence. This, we think, was a question for the jury. The unevenness of the pathway and the difficulty of progess might lead to the reasonable inference that it was the duty of Myers, in the exercise of ordinary care for the safety of his fellow workman, to give some warning of his intention to change the position of the pipe. We are unwilling therefore to say that there was no substantial evidence tending to support the verdict of the jury.

It is lastly contended that the verdict and judgment based thereon is excessive. To this we agree. Plaintiff was twenty-eight years old at the time of his injury, with a life expectancy of thirty-seven years under normal conditions. He was earning approximately twenty dollars a week. In estimating the present value of his future earnings, appellee assumed that he would have continued to earn through the remainder of his life an amount equal to his earning capacity at the time of his injury which it was also assumed was much more than he was actually earning because of economic conditions. Based on these assumptions, we are presented with a calculation which with damages for his pain and suffering, would justify the amount of the verdict. It is appellee's con-

tention, which is supported by some testimony, that his fall resulted in injury to his spine and serious impairment of his nervous system, causing the sphincter muscles to become flaccid; that because of this he is unable to control the movements of his bowels and kidneys which will finally result in complete paralysis. If appellee's physical condition is as he contends, it is hardly to be presumed that he will live through his normal life expectancy, but, as we view the testimony, the progress and duration of his physical disabilities is more or less conjectural, and there is but little evidence to show that these disabilities would be accompanied by much physical suffering. With regard to his earning capacity, it may be said that he is a common laborer with but little expectation that his earning capacity would increase with the years; rather, it is more likely that it will diminish. It is a matter of common knowledge that a man's capacity for manual labor decreases with age, and when past fifty his services are not in demand.

We have been cited by both appellant and appellee, to many cases where the amount of judgment allowed or reduced is thought to sustain their respective contentions. These cases, however, are but little authority, as each case, with respect to the amount of judgment, must rest upon its own peculiar facts. In the case at bar, it is our conclusion that the amount awarded is excessive, and that the judgment should be reduced to the sum of $30,000. It is therefore ordered that the judgment of the lower court be modified to the extent mentioned, and as modified, it is affirmed.

SMITH, McHANEY and BAKER, JJ., dissent.