CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. HOUSTON.

4-7690                                          189 S. W. 2d 904

Opinion delivered October 29, 1945.

*Thos. S. Buzbee* and *A. S. Buzbee,* for appellant.

*Jeptha A. Evans,* for appellee.

MILLWEE, J.  Appellee brought this action for recovery of damages on account of personal injuries sustained by operation of a switch engine in the yards of appellant railway company at Booneville, Arkansas, in the early hours of March 19, 1944. Appellant railway company, its trustees, and K. R. Briggs, engineer, were made party defendants. The complaint alleged that appellee's injury resulted from the negligence of appellants in failing to maintain a proper lookout and failure to exercise ordinary care to avoid injury to appellee after his perilous position on the right-of-way was discovered, or should have been discovered by the exercise of such care.

The answer of appellants contained a general denial and alleged that appellee's injuries, if any, were the result of his own negligence. Trial resulted in a verdict and judgment in favor of appellee for $13,750. Appellants urge two grounds for reversal of the judgment: (1) A verdict should have been instructed for appellants. (2) The verdict is excessive. Under our well settled rule, the first contention must be overruled, if there was any substantial evidence viewed in the light most favorable to appellee to support the verdict.

Appellee was the only witness in his behalf. According to his testimony he was walking home about 1:30

a.m. along the railway tracks, which were frequently used by people living in his section of town. It had been raining and the streets were muddy. The railway tracks run east and west at a point where Owen Street crosses the tracks, the street running north and south. Appellee was traveling west and as he reached the Owen Street crossing he observed the switch engine with a car attached to the front traveling east, and saw Ray Bentley near the switch which was situated a few feet north of the tracks on the west side of Owen Street. He talked to the switchman and started west up the tracks. When he had gone a short distance he felt a vibration and upon turning around found the engine almost upon him. The light on the rear of the locomotive blinded him. He jumped and his foot was caught in a frog. He grabbed at the train and was unable to free his foot from the frog before the engine passed over his right leg, after first striking his left hip. The engine and car attached to the east end was backing west about five or six miles per hour at the time he was run over, and no alarm signals were given by the train. He was taken to St. Edward's Hospital where his leg was amputated about four inches below the knee and he remained in the hospital thirteen or fourteen days.

Appellee further testified that during the course of the evening before he started home he had drunk four or five bottles of beer, but was not intoxicated. He had been fined for drunkenness seven or eight times within a twenty months period immediately prior to his injury. He denied making any attempt to board the train.

Appellants say that all of the testimony other than that of appellee contradicts him, and they rely strongly on the case of *Missouri Pacific Railroad Co.* v. *Hancock*, 195 Ark. 414, 113 S. W. 2d 489. In that case this court said: ''When a jury has returned a verdict on conflicting testimony, and the testimony supporting such verdict is of a substantial nature, this court will not set it aside because the justices would have reached a different conclusion; nor will it be set aside on account of the number of witnesses testifying against the successful party, or on account of the character of the witnesses, unless they

are wholly discredited; nor because the only testimony in favor of the successful plaintiff or defendant was that of the party or parties to the complaint, they being interested. These general principles have been often repeated.''

Following the above statement is an exhaustive review of the cases which tend to support it, but it was further stated by the court in the opinion: ''Even though juries are the 'sole judges,' etc., their verdicts, in order to be sustained, must be based upon *substantial* evidence, and while as a general rule any *reasonable* evidence will be regarded as substantial, yet 'Where personal testimony is at variance with physical facts, and such repugnance is material, and is also self-evident, improbable conclusions drawn in favor of a party litigant through the sanction of a jury's verdict will not, on appeal, be looked upon as inviolate if in conflict with recognized elements of time, mathematics, and the accepted laws of physics.' *Magnolia Petroleum Co.* v. *Saunders,* 193 Ark. 1080, 104 S. W. 2d 1062. See, also, *St. Louis S. W. Ry. Co.* v. *Ellenwood,* 123 Ark. 428, 185 S. W. 768.''

It is insisted that the physical facts are at variance with appellee's testimony to the effect that the engine first struck him on his left hip. It is said that if appellee had turned around, he would be facing the engine and his right side would be the one closest to the engine and it would have been impossible for the engine to strike him on his left side. This would depend upon whether appellee turned to his left or his right, and whether he made a complete turn. It might also depend upon whether he fell backward or forward from the tracks when his foot was caught in the frog. Since these details were not developed in the testimony, it cannot be said that appellee's version of the incident so varied with the physical facts as to make his testimony impossible or unbelievable.

It is true, the testimony of the employees of the railway company who were in charge of the switching operation contradicted that of appellee on several points. Ray Bentley testified that appellee spoke to him at the Owen Street crossing; that the engine had stopped and he was

throwing the switch at that time. Bentley then gave the signal to back up and boarded the engine on the south side while it was still standing at the crossing. He did not see appellee again until after the accident when he found the heel of appellee's shoe in the frog which is a part of the switch west of the one the witness was operating. The fireman testified that he was in the north side of the cab adjacent to the switch operated by Bentley and was keeping a lookout. He did not see Bentley at the switch or appellee talking to Bentley. The first time he saw appellee "he was lying by the frog where we hit him." The foreman of the switch crew testified that he was riding on the south side of the front or east end of the engine as it was backing west and saw appellee try to board the train from the north side opposite the point where the witness was riding.

An attempt to detail all the evidence would only emphasize the sharp conflict between the testimony of appellee and that of the employees of the railway company on certain points. The finding of the shoe heel of appellee in the frog where he was injured is a circumstance strongly corroborative of the fact that his foot was caught in the frog. Whether this fact and appellee's injury occurred as a result of the conditions as testified to by appellee, or from his attempt to board the locomotive as related by one of the trainmen, was a question of fact which was submitted to the jury under proper instructions of the trial court. The issue thus presented is analogous to the question before this court in the case of *St. Louis Southwestern Railway Company* v. *Ellenwood, supra,* where Mr. Justice HART, speaking for the court, said: "Appellate courts take notice of the unquestioned laws of nature, of mathematics, of mechanics and of physics. So where there are undisputed facts shown in the evidence, and by applying to them the well known laws of nature, of mathematics and the like, it is demonstrated beyond controversy that the verdict is based upon what is untrue and what cannot be true, this court will declare as a matter of law that the testimony is not legally sufficient to warrant the verdict. In the case at bar the conditions surrounding the plaintiff, as testified to by the

defendant's witnesses, furnish a very strong argument against the credibility of his testimony, but this is as far as the record authorizes us to go. It can not be said that the testimony of the plaintiff is contradicted by the physical facts or is opposed to any unquestioned law of nature. His testimony related to matters, situations and conditions which might or might not have existed, and his right to recover depended wholly upon the truth or falsity of his testimony. His testimony was, therefore, evidence of a substantial character and if believed by the jury, was sufficient to warrant a recovery in this case.''

It is also argued that appellee's condition of intoxication rendered him unworthy of belief. The jury had the benefit of full information on appellee's drinking and state of intoxication during the evening preceding his injury and for two years prior thereto. A short time before his injury appellee drank some coffee at a cafe. According to one of the cafe employees on duty at the time, appellee acted like he was intoxicated. Another employee present at the same time could not say whether appellee was drunk or sober. Appellee admitted that he had drunk four or five bottles of beer during the night preceding the injury. It was proper for the jury to hear the testimony offered on this issue, not only for the purpose of determining the credibility of appellee as a witness, but also to determine whether or not his intoxication contributed to his injury. The fact that a person is intoxicated when injured does not, of itself, show such contributory negligence as will defeat his recovery for such injury, but is a circumstance which may be considered in determining whether he was contributorily negligent. *K. C. S. Ry. Co.* v. *Davis,* 83 Ark. 217, 103 S. W. 603; *American Bauxite Co.* v. *Dunn,* 120 Ark. 1, 178 S. W. 934, Ann. Cas. 1917C, 625; *Mills* v. *Silbernagel & Co.,* 204 Ark. 734, 164 S. W. 2d 893. The court gave an instruction to the jury which embodies this well settled rule. It was within the province of the jury to judge the credibility of appellee as a witness under all the facts and circumstances, and we cannot say as a matter of law that the evidence, when considered in its most favorable light to appellee, was not sufficient to support the verdict.

In their contention that the verdict is excessive appellants say there was much evidence of contributory negligence on the part of appellee which the jury could not have taken into consideration in arriving at the amount of the verdict. The case was tried under the comparative negligence statute (§ 11153, Pope's Digest) which provides: "In all suits against railroads, for personal injury or death, caused by the running of trains in this state, contributory negligence shall not prevent a recovery where the negligence of the person so injured or killed is of less degree than the negligence of the officers, agents or employees of the railroad causing the damage complained of; provided, that where such contributory negligence is shown on the part of the person injured or killed, the amount of recovery shall be diminished in proportion to such contributory negligence."

The only instruction requested by appellants under the statute was given by the court as follows: "You are instructed that even though you find from the testimony that defendants' employees were guilty of negligence contributing to the injuries received by plaintiff, but you further find that plaintiff was himself negligent and that his negligence was greater in degree than the negligence of the defendants' employees, then plaintiff is not entitled to recover and your verdict should be for the defendants."

It will be noted that this instruction did not tell the jury that the amount of the recovery should be diminished in proportion to the contributory negligence of appellee, in accordance with the last proviso of the statute. Since this is true, the jury might have failed to give proper consideration to the contributory negligence of appellee in fixing the amount of damages. But it was the duty of appellants to request an instruction on this issue and they cannot be heard to complain in the absence of such request.

Appellee was 37 years of age at the time of his injury, with a life expectancy of 30.35 years. He had been employed as a carpenter and in construction work earning 50 cents an hour prior to his injury. He received a

severe injury resulting in the amputation of his leg and suffered such pain as might be expected from this type of injury. In determining whether a verdict is excessive each case must rest upon its own peculiar facts. *Phillips Petroleum Co.* v. *Jenkins,* 190 Ark. 964, 82 S. W. 2d 264. In fixing the damages we cannot say that the amount arrived at shows such passion and prejudice on the part of the jury as to warrant a reversal of the case.

We find no error, and the judgment is affirmed.