CITY OF FORT SMITH v. WARREN H. DeLAET ET AL

5-4055                                                     411 S. W. 2d 520

Opinion delivered February 6, 1967
[Rehearing denied March 13, 1967]

*Shaw, Jones & Shaw,* for appellant.

*Harold C. Rains Jr.* and *Floyd G. Rogers* and *Theron Agee* and *Warren O. Kimbrough,* for appellee.

PAUL WARD, Justice. This is an eminent domain proceedings filed by the City of Fort Smith to procure an easement and right-of-way fifty feet wide over a 137 acre farm owned by Warren DeLaet and wife and a 676 acre farm owned by Logan L. France and his wife. The easement was sought to lay a thirty-six inch water line to be used in transmitting water from lakes in Crawford County to the City. The line was located in accord with the plat attached, as an exhibit, to the City's petition.

A jury trial, based on the pleadings and the testimony, resulted in a judgment in favor of the DeLaets for $3,500 and in favor of the Frances for $5,000.

On appeal appellant relies on two points: *One,* the trial court erred in failing to direct a verdict in favor of appellant at the close of all the testimony, and; *Two,* the verdicts are excessive.

*One.* There is no merit in this point. The sole contention of appellant here appears to be that it had already paid into court sufficient funds to reimburse appellees. When suit was filed appellant deposited the sum of $84.00 to compensate the DeLaets and $25.00 to compensate the Frances. As will appear hereafter, we are of the opinion that appellees are entitled to damages in excess of the deposits above mentioned. No other reason is advanced by appellant to sustain its contention under this point.

*Two.* After careful consideration of the entire record we are convinced that the judgments in favor of appellees are excessive, not being supported by substantial evidence.

(a)  The testimony relative to damages to the *De-Laet* land is, in substance, as follows:

DeLaet owns 137 acres of good bottom land; has owned it five years; he considers it was worth $25,000 before the taking and $20,000 after the taking. *Mr. Kimes,* an expert witness, has been a real estate dealer for several years; he knows the land and knows where the pipe line runs. The testimony shows appellant has erected or will erect a concrete box on the right-of-way. Kimes thinks the land was worth $23,500 before and $20,000 after the taking. *Mr. Bivens* lives one-half mile away—knows the land and knows where the line runs. In his opinion the land was worth $25,000 or $26,000 before and $20,000 or $21,000 after the taking. He is not a real estate salesman or an expert. Mr. Stanford, an expert witness for appellant thought the land taken was worth $108.

(b)  *Mr. France* owns 676 acres of land, well improved and knows the value of land in that vicinity.

In his opinion the land was worth $100,000 before the taking and $60,000 after the taking. *Mr. Craig,* who deals in real estate and knows this land and the value of lands in that vicinity, and is familiar with the location of the line, thought the land was worth $76,500 before the taking and $60,000 after the taking. *Mr. Stanford* thought the land actually taken was worth $40.50, and that the rest of the land was not damaged.

Thus it appears that appellant's own witness considers the lands taken to be worth more than the amounts deposited in court.

The record discloses the following facts with reference to the two farms. *DeLaet*: The pipe line runs 84 rods across his land and the right-of-way covers 1.12 acres. *France*: The line runs 25 rods across his land and the right-of-way covers .36 of an acre.

It would serve no useful purpose to detail the somewhat lengthy testimony given by appellees and their witnesses. It suffices to say we do not find, in the testimony, any substantial evidence to support the amounts fixed by the jury. None of the witnesses made any explanation, other than heretofore set out, of the conclusions reached. No witness attempted to give any reason why the right-of-way adversely affected the value or use of the farms for which they were best suited.

In the case of *Arkansas State Highway Commission* v. *Byars*, 221 Ark. 845 (p. 851), 256 S. W. 2d 738, we approved this language:

"Juries are not permitted to base their verdicts on speculation and conjecture, and as to whether there is any substantial evidence to support the verdict is a question of law and not fact."

In the above case, at page 849 of the Ark. Reports, we also said:

"Where a witness gives his opinion as to damages, such testimony must be considered in connection with related facts upon which the opinion is based."

In the case of *Arkansas State Highway Commn.* v. *Ptak,* 236 Ark. 105 (p. 107), 364 S. W. 2d 794, there appears this statement:

"But the fact that Mr. Powell gave the property a before (the taking) and after (the taking) value does not, within itself, raise the testimony to that degree known as substantial evidence."

Considering the testimony in this case in connection with the rules above announced, we cannot in good conscience, say the jury verdicts are supported by substantial evidence.

Reversed and remanded.

FOGLEMAN and BYRD, JJ., dissent.

CONLEY BYRD, Justice, dissenting. In *Arkansas State Highway Commn.* v. *Johns,* 236 Ark. 585, 367 S. W. 2d 436 (1963), we said:

"Two of the witnesses, Bob Gelly and Joe Snelly, were real estate dealers in Crawford county. After having first stated that they were familiar with land values in the vicinity of the Johns property and that they had inspected this property, both these witnesses expressed their opinion as to the fair market value of the appellees' property before and after the taking. The appellant made an unsuccessful attempt to have this testimony stricken, on the ground that neither witness had stated the facts and reasons forming the basis for his opinion. In insisting that the testimony should have been excluded the appellant cites cases such as *Ark. State Highway Commn.* v. *Byars,* 221 Ark. 845, 256 S. W. 2d 738, holding that the opinion of an expert witness is not substantial evidence when the witness fails to give a fair or reasonable basis for his conclusions.

924

We think counsel have misconstrued the intent of our cases. It is true that a non-expert witness, such as a layman testifying about a testator's mental capacity, must state the facts upon which his opinion is based before giving that opinion. *Walsh* v. *Fairhead,* 215 Ark. 218, 219 S. W. 2d 941. But there is no similar condition to the admissibility of an expert's opinion.

An expert witness, after having established his qualifications and his familiarity with the subject of the inquiry, is ordinarily in a position to state his opinion. For instance, a physician might testify that he had examined a certain patient and found him to be afflicted with malaria. That testimony would unquestionably be admissible. Yet if this physician, on cross-examination, were forced to admit that he had found no recognized symptom of malaria and had based his conclusion solely upon the fact that the patient had been bitten by a mosquito, then, under the rule in the *Byars* case, the witness's opinion would no longer constitute substantial evidence.

It was incumbent upon counsel for the appellant to support their motion to strike by showing that the landowners' expert witnesses had no reasonable basis for their opinions. Counsel actually made no effort in that direction, the motion to strike Snelly's testimony having been made without any cross-examination at all. Thus there was a complete failure to overcome the *prima facie* admissibility of the testimony that was challenged."

The property owners here followed the same procedure set out in the *Johns* case by establishing the qualifications of their witnesses and then having them testify to the before and after fair market values of their lands. Appellant, the City of Fort Smith, made no effort to show that the witnesses had no basis for their testimony.

On appeal, appellant has argued that there is no evidence of any severance damages, but its arguments

overlook the effect of the proof of damages by giving the fair market values of the total lands before and after the taking of the easement.

I have found no case overruling the *Johns* case, which incidentally was tried in the same county and before the same judge involved in the case at bar. With the *Johns* case as my authority, I, too, would have tried this lawsuit in the same manner as did the trial court and lawyers.

Furthermore, I think that a basis for the severance damages of the appellees is shown. One of the benefits of owning property is the right to exclude others, and consequently the loss of this right affects the market value of the lands. The appellees were cattle farmers, and it makes no difference in this situation whether they were dairy or beef cattle farmers, for in each instance the pounds of milk produced each day or the pounds of beef produced each day has a direct relation to the grass consumed by the cows. Consequently, every entry on the premises by persons to whom the cows are not acclimated will cause a disturbance which cuts down on the amount of grass consumed by the cows.

Appellant has placed air blow boxes (concrete boxes) on the lands of both appellees. The boxes, being of a mechanical nature, obviously will require some type of maintenance. How many trips will result from maintenance and how many trips will result from unauthorized persons as a result of a pecan tree or a squirrel that the authorized personnel told somebody about is a matter of speculation, but it is a common problem with cattle farmers. Those little concrete boxes would stick out like a sore thumb to a prospective purchaser of the lands.

While this argument may sound like "nit picking" to some, I have only to remind many business men that they prefer that their production lines be not interrupted by a candidate for public office. It gets down to the

same reason: the interruption affects the volume of production.

For these reasons, I dissent.

John A. Fogleman, Justice, dissenting. Certainly the verdicts in these cases seem extremely liberal, but I do not believe that we are justified in reversing the judgments on the lack of substantial evidence to support the verdicts on the record before us. As an appellate court, we are concerned only with errors of a trial court as a basis for reversal. This is a question never properly raised in the trial court, so it has not properly reached us.

There were two witnesses in addition to the owner who testified about values of the DeLaet lands and four, in addition to owner France, who testified about values of the latter's property. Our attention is called to only one objection to the testimony of any of the witnesses and that was to the qualifications of the witness George Bivens for appellee DeLaet. Appellant then calls attention to a motion for directed verdict after appellee France had rested, motion having been made previously when appellee DeLaet rested, contending that the landowners had failed to sustain the burden of proof as to the value of the land actually taken, and that there had been no testimony by appellees except as to the before and after value of the land. He next directs our attention to a motion for a directed verdict at the conclusion of all the testimony on the basis of the evidence adduced by both sides.

No motion had been made to strike the testimony of any witness and no motion for a new trial was made. Appellant apparently relies on the motions for a directed verdict as the basis for his appeal. At no time did appellant make known to the trial court his objections to the lack of evidence sufficiently substantial to support a verdict,—action made sufficient by Ark. Stat. Ann. § 27-1762 (Repl. 1962).

We have long been committed to the rule in Arkansas that a verdict should not be directed when, taking that view of the evidence most favorable to the party against whom the verdict would go, there is *any* evidence to establish an issue in his favor. *Barrentine* v. *Henry Wrape Co.,* 120 Ark. 206, 179 S. W. 328. This was called a well-established rule in *Yahraus* v. *Continental Oil Co.,* 218 Ark. 872, 239 S. W. 2d 594. See, also, *Great Southern Mutual Life Ins. Co.* v. *Smith,* 177 Ark. 1194, 291 S. W. 441.

Sometimes the rule is stated conversely, *i. e.,* a verdict should be directed against a party *only* when there is *no* evidence tending to establish an issue in his favor, when viewed in the light most favorable to him, as in *Pugh* v. *Camp,* 213 Ark. 282, 210 S. W. 2d 120, where the decision turned on the point that a jury issue exists whenever the only evidence on that issue is the testimony of a party, and the *issue is made only because the testimony of a party cannot be taken as undisputed.*

I am not unaware of the statement in *Hawkins* v. *Missouri Pacific R. Co.,* 217 Ark. 42, 228 S. W. 2d 642, that a trial judge may grant a motion for directed verdict ''only if the evidence would be so insubstantial as to require him to set aside a verdict for the plaintiff should such a verdict be returned by the jury.'' The court, however, reversed the action of the trial court in directing a verdict, so the decision did not change the rule from ''any evidence''. This is further illustrated by the fact that none of the authorities cited for the statement require that the trial court direct a verdict in the absence of ''substantial'' evidence. One of these, *St. Louis Southwestern R. Co.* v. *Britton,* 107 Ark. 158, 154 S. W. 215, says quite the contrary. Another, *Missouri Pacific Railroad Co.* v. *McKamey,* 205 Ark. 907, 171 S. W. 2d 932, is only authority for the proposition that a motion for a directed verdict is properly *denied* when there is substantial evidence which would support a contrary verdict. In the other, *Ozan Lumber Co.* v. *Tidwell,* 210 Ark. 942, 198 S. W. 2d 182,

it is only stated that the question at issue should go to the jury whenever fair-minded men might honestly differ as to the conclusions to be drawn from the facts. While the *Hawkins* case was cited as authority in *Harper* v. *Missouri Pacific R. Co.*, 229 Ark. 348, 314 S. W. 2d 696, the court affirmed because there was *no* evidence to show certain requisite facts. The *Hawkins* case is also cited as authority in *Wood* v. *Combs*, 237 Ark. 738, 375 S. W. 2d 800, but only for the proposition that a question is made for the jury when reasonable men might differ as to which party was guilty of the greater degree of negligence. This opinion is also cited by its author in another case, *Penny* v. *Gulf Refining Co.*, 217 Ark. 805, 233 S. W. 2d 372, but he stated that the court could not say that the statements relied upon by appellants there to make a fact issue constituted *any* evidence to support his theory. I have not found where the case is cited as authority for the proposition that a verdict should be directed where there is evidence to support a contrary verdict found to be not substantial.

The failure of a motion for a directed verdict to raise the question on which the majority chooses to act in reversing these judgments is pointed up in *St. Louis Southwestern, R. Co.* v. *Britton,* 107 Ark. 158, 154 S. W. 215. There it was said:

"* * * it has been repeatedly held that the circuit court has no power to determine the facts of the case and direct a verdict for either party, *even though, if returned for the opposite party, it would set it aside as against the weight of the evidence. The only remedy in such cases is for the circuit court to promptly set aside verdicts that are clearly against the weight of the evidence.*" [Italics ours]

It was also stated that in passing upon a *motion for a new trial on the ground that the evidence is not legally sufficient to sustain the verdict,* the trial court is required to consider the element of improbability, and, if

the trial judge should be of the opinion that the verdict is clearly against the preponderance of the evidence, it is his duty to grant a new trial. "Not so with this court", said the writer of the opinion, adding that this court only reviews for errors and *cannot reject testimony unless it is contrary to the laws of nature or is opposed to the physical facts in the case.*

The question, whether the evidence is substantial enough to support the verdict, *on appeal,* is raised by the overruling of a motion for a new trial by the trial court. In *St. Louis Southwestern R. Co.* v. *Ellenwood,* 123 Ark. 428, 185 S. W. 768, where this court reviewed the rule, it was said:

"In view of the testimony in this case, once more we will take occasion to point out the distinction between the rules which govern trial courts and this court with respect to setting aside verdicts. This court has repeatedly declared the rule to be that, where the trial court has overruled a motion for a new trial based upon the insufficiency of the evidence, and where there is any substantial evidence to support it, the verdict of a jury will be upheld on appeal. The reason for the rule is: First, that the jury have weighed the evidence and found the verdict; second, that the circuit judge, who also heard the testimony from the mouths of witnesses and weighed the same, has by overruling the motion for a new trial given the approval of his legal judgment to the verdict; third, this court cannot have the benefit of seeing and hearing the witnesses and observing the peculiarity of their expressions while testifying, but only has the opportunity generally to read the substance of their testimony. Therefore the court has repeatedly declared the law to be that if, after a consideration of all the evidence, the trial court is of the opinion that the verdict of the jury is contrary to the weight of the evidence, it is the duty of that court to set aside the verdict. This distinction has been uniformly made. *St. L. S. W. Ry. Co.* v. *Britton,* 107 Ark. 158, 154 S. W. 215; *McDonnell* v. *St. L. S. W. Ry. Co.,* 98 Ark. 334, 135 S. W. 925; *Black-*

*wood* v. *Eads,* 98 Ark. 304, 135 S. W. 922; *Richardson* v. *State,* 47 Ark. 567, 2 S. W. 187; *Catlett* v. *Railway Co.,* 57 Ark. 461, 21 S. W. 1062, 38 Am. St. Rep. 254. So under the settled rules of this court we must uphold a verdict on appeal if there is any substantial evidence to support it.''

See, also, *Kansas City Southern R. Co.* v. *Sparks,* 144 Ark. 227, 222 S. W. 724; *Northwest Arkansas Farmers' Mutual Tornado Ins. Co.* v. *Osborn,* 180 Ark. 757, 22 S. W. 2d 387.

It is true that the court has said in some cases that a case *will not be reversed by this court* where the trial court is charged with error in failure to instruct a verdict, where there is any substantial evidence to support the verdict. See, *e. g., Chicago R. I. & P. Ry. Co* v. *Houston,* 209 Ark. 217, 189 S. W. 2d 904; *Huffman Wholesale Supply Co.* v. *Terry,* 240 Ark. 399, 399 S. W. 2d 658.

It has also been said that it is error for the trial court to direct a verdict if there is any substantial evidence tending to establish an issue. *Shearer* v. *Morgan,* 240 Ark. 616, 401 S. W. 2d 21. This is a far cry from saying that a trial judge should determine whether the evidence favoring one against whom a verdict would be directed is substantial, and, if not, that he commits error in failing to direct the verdict. The *Huffman* case, decided March 7, 1966, and the *Shearer* case, decided April 4, 1966, cited the *Barrentine* case as authority so they, this recently, did not change the rule of the *Barrentine* case but recognized it.

I am fully aware of the fact that Act 555 of 1953, Ark. Stat. Ann. § 27-2127.5 (Repl. 1962), made motions for a new trial unnecessary, but the motion was not done away with and this would be an appropriate use of the motion. The Act definitely did not change the rule so that a motion for a directed verdict raised the question whether the evidence was ''substantial''. As to

this point, the situation is entirely different from that which obtained in *Southern National Insurance Co.* v. *Williams*, 224 Ark. 938, 277 S. W. 2d 487. There it was held that Act 555 made it no longer necessary to challenge the excessiveness of a jury verdict by a motion for new trial. The conflict of the inference of the section of the Act eliminating the necessity of a motion for new trial with that of the section [Ark. Stat. Ann. § 27-1762] requiring that the trial judge be given an opportunity to avoid an error of his own making was resolved by reason of the fact that an excessive verdict is attributable to the jury and in no way to the judge. Thus, this court can act just as well as the trial court. On the other hand, it is inevitable that in determining the question whether evidence is substantial there be some weighing of the testimony which requires observation of the appearance, manner and behavior of the witnesses— something not apparent from a cold typewritten transcript.

In addition to filing a motion for new trial, appellant might have earlier raised the question as to whether the evidence was "substantial" by other means. If the examination of appellees' witnesses demonstrated that there was no reasonable basis for their opinions, their testimony should have been stricken on motion to strike. *Arkansas State Highway Commn.* v. *Russell*, 240 Ark. 21, 398 S. W. 2d 201.

If we are to remain truly an appellate court, we must consistently require that questions be properly raised in the trial court and that court given a proper opportunity to act before we will consider them. I would affirm the judgment of the lower court for the reasons herein stated. I would also affirm on the basis of the reasons stated by Justice Byrd in his dissent.