DUCKWORTH *v.* STEPHENS.

Opinion delivered July 14, 1930.

162

Pryor, Miles & Pryor and Warner & Warner, for appellants.

Partain & Agee, for appellee.

BUTLER, J. At a point on highway No. 64, connecting Van Buren with Alma, two miles from the first named city, the highway is surfaced with concrete eighteen feet wide, spaces being on either side between the concrete and ditches four or five feet wide, called shoulders. At this point the highway is straight for a half mile or more. About midnight on October 12, 1929, two women and a young man were traveling east in a one-horse buggy. When they reached the point above described, the young man, who was seated on the left, drove the buggy to the extreme right of the highway with the right wheels well out on the shoulder and stopped the buggy for the purpose of alighting and proceeding to his home nearby, it being the purpose of the women to continue further east in the buggy to their homes. Just as the man reached the ground a Ford coupe, also traveling east, struck the buggy violently from the rear demolishing it, killing the horse and severely injuring the man and the women. There were four persons in the Ford coupe, two men and two women. After striking the buggy the Ford continued on without pausing for some further distance. One or two persons followed in another car which had appeared on the scene and overtook the Ford coupe a short distance away as it was turning around, and from there followed it back, passing the point of collision and into Van Buren, where the driver was stopped and arrested. It was then discovered that the car belonged to the appellants, and the driver was one Duckworth, who was their employee.

Out of the occurrence above narrated has arisen this litigation which resulted, on a consolidation of the cases in the court below, in a verdict for each of the parties injured. From that verdict and judgment is this appeal.

It was and is the theory of the appellees that the driver was negligent in driving his car off the concrete and along the shoulder of the highway and in failing to keep a proper lookout ahead, and that this negligence was the direct efficient cause of the collision. The appellants' (the employers of Duckworth) liability is predicated on the theory that the driver, Duckworth, was their servant, and his negligence occurred, from which the injury resulted, while he was engaged in the service of his masters. Appellants defended on the ground that Duckworth was in the exercise of due care at the time of the collision, and that this occurred because of the contributory negligence of the appellees in traveling at night without a light on their buggy and in stopping same on the side of the highway without having a light attached to it in the manner and of the kind required by the highway traffic statutes. As a further defense, appellants contend that while Duckworth was in their employ and the automobile used by him was their property and given to him for use in their service, at the time of the collision he was on a mission purely personal to himself, and in no way connected with the discharge of any service or duty for them.

At the trial testimony was introduced by appellees relative to the pursuit and capture of Duckworth over the objection and exceptions of the appellants. The admission of this testimony is here assigned as error. At the time of its admission the court limited its consideration solely to the purpose of identification of the car and its driver and admonished the jury not to consider it for any other purpose. If the driver's conduct in failing to stop at the scene of the collision and continuing on until forced to stop was no part of *res gestae* and inadmissible as tending to establish his want of care, it was clearly competent for the purpose to which it was limited by the court, even though the identification might have been established by other evidence. The admission of this testimony was therefore not error.

The physician who treated Stephens (the man who was injured) when he was first carried to the hospital testified as to the character and extent of the injuries. He stated that they were of a painful and serious nature and gave it as his opinion that the skull was fractured at the base, and from this and the accompanying symptoms he concluded the injuries might occasion insanity, epilepsy, or death. At the time of his testimony he had not seen Stephens since he left the hospital some months before. Stephens had testified that his ear was still discharging pus, and the physician testified that, if this were true, Stephens' condition was still serious. On cross-examination the physician stated that he did not know what the final outcome of the injuries would be, and that he did not mean to state what his condition might or might not be later; that possibly none of the results he anticipated and to which he testified might occur. At the conclusion of the physician's testimony the appellant stated to the court: "As I understand Dr. Taylor's testimony, he is not willing to state the conditions and extent of the injuries to Stephens or even a probability, but that it is merely a possibility and may not happen. Therefore we move to exclude all of the testimony of Dr. Taylor in so far as that is concerned." This motion was overruled, and appellee excepted and here urges the action of the court as reversible error, and in support of their position cite and rely on the case of *St. L. I. M. & S. R. Co.* v. *Bird,* 106 Ark. 177, 153 S. W. 104. In that case the court held that the testimony of the physician was too vague and uncertain to be a sufficient basis upon which the jury might assess damages for permanent injury. In holding the evidence insufficient, the court said: "The testimony, viewed in its most favorable light in favor of the appellee, does not make it reasonably certain that Wharton Bird was permanently injured. Unless there is testimony tending to show with reasonable certainty the injury is permanent, the court should not

permit the jury to assess damages for a permanent injury." The court, by its instruction No. 9, in effect eliminated the testimony of Dr. Taylor regarding possible future conditions and permanency of the injury, but the appellants contend that the instruction did not cure the vice inherent in the court's action in refusing to eliminate the doctor's testimony in these particulars entirely from the consideration of the jury. But the doctor had testified positively to the condition of Stephens when he was brought to the hospital that he was unconscious and remained so for about five days, suffering and bleeding from the left ear and a fracture at the base of the skull, and that any injury of this character was serious. He remained at the hospital until his doctor's bill and hospital fees amounted to $197.60. The testimony of Dr. Taylor in this case is distinguishable from that of the physicians in the Bird case, *supra,* in that the physicians in that case did not testify as to any physical injury. Their testimony, and the opinions they gave, were based on a history of the case and on certain symptoms they observed in the person injured after the alleged injury. One of them testified: "I do not find any physical injury about him. You have to take the whole assembly of symptoms together with a history of the case to find out whether you have a case of traumatic neurasthenia. I cannot say that he had a single symptom pointing to a permanent injury." Another physician also testified only from symptoms observed subsequent to the alleged injury, and in concluding his testimony he said: "Taking this child's case, I could not say that the probabilities of its recovery are greater than that it will not recover in a reasonable time. It is a doubtful case. I would not be sure that it is permanent or not." And the court, in commenting on this testimony and in holding that it of itself was insufficient and a matter of speculation only as to the permanency of the injury, said: "But to fulfill the requirements of the law there must be affirmative testimony to

the effect that the injury was permanent before the jury would be authorized to find that such was the fact, * * * where the witnesses themselves are uncertain as to whether there would be any permanent injury, and *where the nature of the injury per se does not show that the injury was permanent.*'' In the instant case we have the testimony of the physician that Stephens was brought to the hospital bleeding from the left ear, unconscious and remaining so far a long time, and that it was his opinion that the skull was fractured, and that this was necessarily a serious condition. Stephens testified some months later at the trial that his ear was still discharging pus and that he was still suffering great pain. The injury itself speaks and of itself indicates its permanency, which fact, considered with all the other evidence relating to the injury, we think sufficient to submit that question to the jury.

The jury returned a verdict in favor of Stephens for $3,000. This clearly indicated, in view of the expense to which he had been put, his loss of time and the suffering which he had endured and was still enduring, that the verdict was uninfluenced by passion or prejudice, and its amount was amply warranted. On these matters alone, without taking into consideration ''his future diminished power to earn a livelihood, if any,'' as stated in Stephens'- instruction on the measure of damages, it is reasonable to believe that the admonition of the court in instruction No. 9: ''You are instructed that in determining the extent of the injury to either of the plaintiffs you are not to consider any merely possible damages or results or conditions, if any, and you will disregard all testimony as to any possible future developments,'' was duly considered by the jury and rendered innocuous the admission of the testimony and the reference in the instruction on the measure of damages to his diminished capacity to earn a livelihood, if any.

It is further insisted that the court erred in giving plaintiffs' requested instructions Nos. 1A and 3A. To both of these instructions certain specific objections were made by the appellee, and the court, before giving them, modified them to meet the objections raised. Therefore there was no error unless the instructions were inherently wrong. By instruction No. 1A the court submitted to the jury the question as to whether Duckworth operated his car so far to the right of the highway as to be off the concrete surface and partly on the shoulder, and if so, whether the same was negligence causing the injury. It further submitted the question as to whether in operating the car Duckworth was acting within the scope of his employment under the instructions of the appellants and as their servant and on a mission for them "which was not a mere incidental purpose to the journey." Instruction No. 3A is identical with No. 1A except the question of negligence submitted was whether Duckworth was negligent in failing to keep a proper lookout. Appellants insist that instruction No. 1A is erroneous because there was no evidence that Duckworth drove his car so far to the right as to be off the concrete and partly on the shoulder. In this the appellants err. The testimony of several witnesses was to the effect that the wheel marks of Duckworth's car showed several feet to the right of the concrete and on the shoulder before it reached the point where it collided with the buggy.

Further complaint is made that the instruction wholly omitted the question of proximate cause and submitted as the only question whether or not Duckworth negligently operated his car off the concrete highway. In *St. L. I. M. & S. R. Co.* v. *Bird, supra,* disposing of a similar complaint, the court, at page 187, said: "The specific ground of criticism is because the instruction does not say that the negligence of appellant must be the proximate cause of the injury. If the injuries resulted from appellant's negligence, then there is no question in

the evidence but what such negligence was the proximate cause of the injury. Therefore there is no prejudicial error because the instruction did not contain the qualification that appellant insists on. The undisputed evidence shows that the proximate cause of the injury was the collision of appellant's train with the appellee's wagon, and, if this collision was caused by appellant's negligence, then such negligence was the proximate cause of the injury.''

In the instant case the fact is undisputed that the appellees were injured by being struck by appellants' car driven by Duckworth, and there is therefore no question as to the proximate cause of the injuries. *Gates* v. *Plummer,* 173 Ark. 27-31, 291 S. W. 816.

It is also insisted that instruction No. 3A is erroneous in submitting to the jury the question of Duckworth's negligence in failing to keep a proper lookout, since it is undisputed that the buggy carried no lights in violation of the law, and that therefore his failure to keep a lookout would not constitute actionable negligence, as he rested under no duty to keep a lookout for unlighted vehicles and those traveling therein. As authority for this contention the appellants cite the case of *Coca-Cola Bottling Co.* v. *Shipp,* 174 Ark. 130, 297 S. W. 856. We cannot agree with the appellants as to the correctness of the rule urged, nor that the case cited supports such view. It is true, that case cites the case of *Murphy* v. *Hawthorne,* 117 Ore. 319, 244 Pac. 79, which appears to support the appellants' contention; but, from a careful examination of the original opinion in the Shipp case and the opinion on rehearing, there appears to be nothing which would support the view that the case of *Murphy* v. *Hawthorne* was adopted and approved by this court in its entirety. The most this court decided, and the rule it there laid down was that one driving an automobile at night too fast to stop within the range of his own lights in case of a collision is not guilty of negligence as a mat-

ter of law, but that each case must be considered in the light of its own peculiar state of facts and circumstances, the test being what an ordinarily prudent person would have done under circumstances as they then appeared to exist; and that whether it was negligence to leave a car parked in the nighttime without lights was also not negligence *per se* but was a circumstance to be considered with the other attendant circumstances in determining whether it was negligence or not. We have frequently held that violations of the State traffic statutes are merely evidentiary of negligence and not conclusive of the issue, *Pollock* v. *Hamm,* 177 Ark. 348, 6 S. W. 541; *Mays* v. *Ritchie Gro. Co.,* 177 Ark. 35, 5 S. W. (2d) 728. And in the case at bar the failure of appellees to light their buggy was a question for the jury whether under the circumstances Duckworth was, or was not, guilty of negligence in failing to discover the appellees, and whether appellees were guilty of contributory negligence in stopping the buggy without displaying tail lights. These questions were submitted to the jury under proper instructions. In these particulars the failure to attach lights to the buggy was a matter of proper consideration, but it did not relieve Duckworth from the duty of acting as a reasonably prudent person in the operation of his car and of keeping such lookout as prudence for his own safety and humanity for the safety of others would dictate. We therefore hold that the court did not err in its declaration in this regard.

Appellants complain of the refusal of the court to give a number of instructions requested by them and of modifying other instructions and giving them as modified. We find that the court gave twenty-two instructions at the request of the appellants which fairly presented (and indeed more favorably in some than they were entitled to) appellants' several defenses, and the instructions refused were either peremptory in their nature or had been fairly covered by those given. We do not set

out the several instructions given and refused and refrain from commenting further upon them because it would serve no useful purpose and would unduly extend this opinion to do so.

The principal question involved in this case and the one urged as error in the instructions given at plaintiffs' request, and upon which its request for a directed verdict was based, is that the testimony fails to show that Duckworth at the time of the collision was in the service of his co-appellants, but rather that it shows that he was upon a mission of a purely personal nature and in no wise connected with the duties of his employment. The testimony may be said to fairly establish the fact that Duckworth was in the general employ of his company (appellants), a partnership engaged in the sale of electrical refrigerating devices among other things, and that it was his duty to repair and keep in proper operation the articles sold by his employers, in which duty he had been engaged for approximately ten years. For this purpose he was furnished with an automobile and with such tools as were necessary for the performance of his work. He kept the car in his possession, and, while as a usual thing he was given a half-holiday on Saturday, it was his duty, whether called from the office or notified in any other way, to go day or night for the purpose of adjusting or otherwise keeping the articles sold by his employers in proper working condition. He frequently would perform these services at different hours of the night and without respect to the day of the week. The main question therefore is, was he engaged in the service of the master at the time of the collision? Duckworth testified that he was. His employers had sold a Frigidaire—a refrigerating device and its container—to an individual at Alma who operated a place of business where soft drinks and other commodities of like character were sold to the public. This place of business was kept open frequently after twelve until two o'clock in the night, according to the re-

quirements of the trade. The refrigerator had been repaired by Duckworth at some time prior to the night of the accident. The proprietor testified that he was unable to state whether it had been two months or two weeks before the date of the collision. Duckworth testified that a young man employed at said place of business at Alma had notified him a few days prior to October 12, 1929, that the Frigidaire was not functioning properly, and asked him to come down at his convenience and adjust it. Duckworth stated that this request had passed out of his mind for a time, but that on Saturday night, October 12, 1929, he remembered it, and, as his services would be required at other places on the first days of the following week, he decided that he would go to Alma on that night, and, as he knew the method of the conduct of the business there, he reasonably expected the place to be open after midnight on Saturday. He invited some friends of his to accompany him, and after leaving Van Buren at or about midnight and proceeding on the highway toward Alma for the purpose aforesaid, he ran into and demolished the buggy of appellees without ever having seen it. Although he testified that he was acting with due care at the time of the collision and that he failed to see the buggy because of the blinding lights of an approaching car and swerved to the right immediately before the collision in an endeavor to avoid the same, all of the circumstances, as well as the testimony of others, tend to negative his care and caution and to show that his conduct at the time of the collision was grossly negligent.

There were a number of circumstances tending strongly to rebut the statement of Duckworth regarding his mission on the night in question and to indicate that, under the influence of liquor, he was spending the evening in disporting himself without thought or care for his duties, and that his contention that he was proceeding to Alma in the service of his employers was a mere afterthought and perhaps an endeavor to extricate himself

from an unpleasant predicament. These matters, however, were questions for the jury, and, while we may think the testimony of Duckworth unreasonable and his statements unworthy of belief, we are not the judges of those matters. If there was any substantial testimony, and we say that there was, the question of the credibility of the witnesses and the weight to be given their testimony is the sole province of the jury, which we have no authority to override or disturb.

We feel that there was no substantial error committed in the conduct of the trial, and that the evidence was sufficient to submit the questions at issue to the jury, and its verdict must therefore be sustained. The rule announced is so well settled that no citation of authority is warranted.

Affirmed.

SMITH, HUMPHREYS and KIRBY, JJ., dissent.