D. F. JONES CONSTRUCTION COMPANY, INC., v. LEWIS.

4-4416

Opinion delivered November 9, 1936.

*Moore, Gray, Burrow & Chowning,* for appellant.
*George A. Hurst, Kelsey Norman, Alfred K. Lee* and
*Henry Warten,* for appellee.

MEHAFFY, J. This action was begun in the Pulaski
circuit court by the appellee, R. E. Lewis, against D. F.
Jones Construction Company, appellant, for damages al-
leged to have been caused by the negligence of the appel-
lant. There was a verdict and judgment in favor of ap-
pellee for $10,000. Motion for new trial was filed and
overruled, and the case is here on appeal.

The appellee testified that he was 49 years of age,
married, and had lived in Fayetteville, Arkansas, for the
last 14 years; that he was a brick and stone mason, and
earned on an average of $135 to $140 a month; he owned
a model "A" Ford roadster. Appellee's brother-in-law
is a telegraph operator for the Frisco Railway Company
at Exeter, Missouri. Appellee and his brother-in-law,
Henson, were riding in appellee's Ford roadster, going
from Exeter to Fayetteville on highway 62. This high-
way enters Arkansas at the town of Gateway. Appellee
was driving between 30 and 35 miles an hour when he
saw a barricade in front, about 15 or 18 feet away. The
barricade was across the road, south of Gateway and
north of Garfield. It was in front of Mr. Briley's house.
There were no other detours or barricades before appel-
lee ran into this one. He had been informed that the
road was barricaded somewhere, and was told to be on
the lookout for barricades. He was going down a slight
incline when he saw the barricade, released his clutch
and threw on the brakes, hit the barricade and turned
over 3 or 4 times, and was skinned up about the head.
He had good lights and was looking for a detour sign.

There was no lantern on the barricade. His car was demolished; his neck was twisted and hurts him all the time; has lost 20 pounds and is unable to work. Dr. Long of Fayetteville treated him. He cannot turn his head without moving his whole body; it pains him all the time. His earnings since the accident average $25 a month. The road he passed over was black top. About three weeks after the injury he talked with Mr. Campbell and told him there were no lights on the barricade and no signs warning persons of the obstruction, and Mr. Campbell said that they had lights, but the truck drivers had taken them down. There was no sign or warning on the road going south toward Garfield. Witness did not see anything until he hit the barricade. His car was almost six years old. He told his brother-in-law, who was with him, to look out for barricades or detours. At Gateway there was nothing to show that the road was under construction. There were no detours; traveled the main road all the way; there were no detour signs at Gateway. From Gateway one road leads to Garfield and Fayetteville, and goes under the viaduct; the other road goes to Eureka Springs. Traveled the main black top road from Gateway until he struck the barricade; this was about two miles south of Gateway. Henson was not leaning out, but was sitting up normally, looking ahead through the windshield. Witness was looking straight ahead, keeping his eyes on the road. The road was straight just before striking the barricade; was within 15 or 20 feet of the barricade when he first saw it; his brakes were good; does not know how far he would travel in attempting to stop his car going at a rate of 35 miles per hour; both lights were burning and witness had tilted his lights down so they would not throw light so far in front; thinks that if he was driving 35 miles an hour and something showed up in front, the lights would show the object in time for him to see it and stop. The windshield was clear. The car turned over three or four times and went about 100 feet before it stopped in an upright position; the barricade was six or seven feet high. He did not go to Mr. Briley's house, but his brother-in-law did; he was dazed and does not remember walking. Three

wheels of the car were broken. When he went to see Campbell he wanted a settlement; and Campbell did not call attention to any sign. The manner in which witness had his lights fixed on his car would cause them to shine at about the distance of the average car.

J. M. Briley testified in substance that he lived on a farm two miles north of Garfield on highway 62 between Garfield and Gateway; had lived there about eight years; his house is about half way between the two towns; he remembers when Mr. Lewis was hurt; the barricade had been up about a month, and there were no other barricades between witness' home and Gateway; there was a barricade south of witness' home at Garfield; the barricade that Lewis ran into is about 300 feet from witness' home; when they first erected this barricade they hung a lantern on it at night and had a big sign up; but the lantern did not stay there very long, and there had not been a lantern on the barricade for about two weeks prior to this accident; witness was at home almost every night, and never did see Mr. McGowan put a lantern on the barricade; there was no lantern on it when witness went to bed on the night of the accident; he was asleep, but heard the crash and told his son to go down there; the barricade was an oak pole across the road. After the accident they put up a lantern on the barricade, and a watchman, and built a fire on the shoulder of the road. Prior to the accident witness approached the barricade at night several times and could hardly see it. After the accident he did not go down to the place either that night or the next morning; does not know whether there was a lantern tied to the chain on the pole; about dark he crossed the road and did not see any lantern burning; what happened after that, he does not know.

John Warren testified that he lived about two miles east of Briley's and had lived there for the past two years. He passed the barrier at night before the accident, and there never was any light on it; does not remember seeing any signs at Garfield; after the accident he saw lanterns hanging there, but none before.

Dale Legg testified that he lived a mile east of Briley's; had lived there all his life, and was familiar

with highway 62; remembers the occasion when a man ran into the barricade, but did not see the accident; walked along there at night, and there were no lights on the barricade. After the accident they put lights on it, and had a watchman there. After the accident a lantern was put on the barricade at Mr. Briley's home with chains around the pole; they also kept a guard there, and a fire.

Floyd Sumney testified that he worked in a garage at Garfield; remembers when the man got hurt by running into a barrier in front of Mr. Briley's farm; thinks the barrier had been there about two weeks; before the man was hurt did not see any light on the barrier at night; after he was hurt they put lights on the barrier.

C. E. Briley testified that he lived with his father, and that the barrier Mr. Lewis ran into was in front of his father's home; saw the barrier on the night of the accident, and there were no lights on it when he went to bed; when they first placed the barrier there they had lights on it, but there had been no lights on it for something like a week before the accident. Witness went down to the scene of the accident; found Mr. Lewis and another man and drove one of them to Garfield; does not remember seeing any lantern on the barricade that was knocked down next morning. When they first put the barrier up witness saw McGowan lighting the lantern, but for some time before the accident he did not light them; after the accident they put a guard there. On the night of the accident he went to bed some time after dark, and there was not a lantern on the barrier at that time; does not remember seeing any fragments of lantern on the pole next morning; there was just one pole across the road; it was about as high as the top of the radiator; did not see any sign on the pole; there was no warning sign at the corner of Briley's horse lot; remembers a big sign at Mr. Mill's place, which is between his home and Gateway. This sign was about 4 by 8 and had in big red letters: ''Danger—road closed—under construction.'' Does not remember any danger signs at other points; witness slept in the south room, and if there had been a lantern on the barricade he would have seen the light; the barrier was a

large oak pole across the highway about the height of the radiator, and was hard to see at night. Lewis Leonard Poe testified that he lived on highway 62; farmer and justice of the peace; he remembers when the man hit the barrier in front of Mr. Briley's place. This witness said he came along the highway at night, and never saw a light on the barrier. After the accident they put up lanterns. The road was open to travel, and he did not see any detour signs or any danger signs. The barrier was a black oak post with the bark on it; believes that if he saw an object at night as far as from witness to the second door, and was going 35 miles per hour, he could stop the car.

Oliver Loller and Will Carter testified as to the physical condition of appellee before and after the accident. Dr. Long testified about treating him.

Appellant's witnesses testified that there were lights on the barrier; that the lanterns were chained to the barricades; and some of them saw a shattered lantern on the pole next morning after the accident. There was also evidence as to how far the car would throw lights down the road at night. The evidence of the witnesses for appellee and appellant was in sharp conflict as to the lights on the barrier.

The appellant insists that the court should have directed the jury to return a verdict for it. It is the settled rule of this court that in testing the legal sufficiency of evidence to support the verdict, we must view it in the light most favorable to the appellee. *Missouri Pac. Rd. Co.* v. *Harding,* 188 Ark. 221, 65 S. W. (2d) 20; *Tri-State Transit Co. of La.* v. *Miller,* 188 Ark. 149, 65 S. W. (2d) 9, 90 A. L. R. 1389; *Roach* v. *Haynes,* 189 Ark. 399, 72 S. W. (2d) 532; *Southwestern Bell Tel. Co.* v. *Balesh,* 189 Ark. 1085, 76 S. W. (2d) 291; *Arkansas P. & L. Co.* v. *Connelly,* 185 Ark. 693, 49 S. W. (2d) 387; *Union Securities Co.* v. *Taylor,* 185 Ark. 737, 48 S. W. (2d) 1100; *American Surety Co.* v. *Kinnear Mfg. Co.,* 185 Ark. 953; 30 S. W. (2d) 825; *Southern Lbr. Co.* v. *Green,* 186 Ark. 209, 53 S. W. (2d) 229; *Anheuser-Busch, Inc.,* v. *Southard,* 191 Ark. 107, 84 S. W. (2d) 89; *Baldwin* v. *Wingfield,* 191 Ark. 129, 85 S. W. (2d) 689;

*Southwestern Gas & Electric Co.* v. *May,* 190 Ark. 279, 78 S. W. (2d) 387; *Arkadelphia Sand & Gravel Co.* v. *Knight,* 190 Ark. 386, 79 S. W. (2d) 71.

On the question of contributory negligence, the appellant first cites the case of *Coca-Cola Bottling Company* v. *Shipp,* 174 Ark. 130, 297 S. W. 856. Its quotation, however, is from the original opinion, which was on rehearing set aside, and the court expressly held that the question of contributory negligence was a question for the jury. We quoted with approval in that case the rule announced by Oregon court. This court has said:

"The rule is that where fair-minded men might honestly differ as to the conclusion to be drawn from facts, either controverted or uncontroverted, the question at issue should go to the jury." *St. Louis, I. M. & S. R. Co.* v. *Fuqua,* 114 Ark. 112, 169 S. W. 786.

It would be useless to discuss that case at length, or the authorities there cited; but the views expressed by this court on rehearing may be found beginning on page 137, and we think that that case is controlling here.

The appellant calls attention to a number of other cases, but we do not deem it necessary to discuss them because we think the facts in this case as to contributory negligence are such that fair-minded men might honestly differ as to the conclusion to be drawn from them, and that the contributory negligence was, therefore, a question for the jury. The jury's finding, if there is any substantial evidence to support it, is conclusive here.

The appellant concedes that all questions in the case except whether the appellee was guilty of contributory negligence, have been settled by the verdict of the jury. That leaves but the one question for us to consider, and that is the question whether there was substantial evidence to sustain the jury's verdict.

The evidence set out above was sufficient to justify the trial court in submitting the question to the jury, and its finding on this question will not be disturbed.

The judgment of the circuit court is, therefore, affirmed.