OZAN LUMBER COMPANY *v.* TIDWELL.

4-8021                                                 198 S. W. 2d 182

Opinion delivered December 16, 1946.

*McRae & Tompkins* and *S. Hubert Mayes,* for appellant.

*William F. Denman* and *Tom W. Campbell,* for appellee.

MINOR W. MILLWEE, Justice. Appellee, Clarence Tidwell, as plaintiff in the circuit court recovered judgment for $15,000 against appellant, Ozan Lumber Company, for personal injuries alleged to have been sustained in a collision between a truck driven by appellee and a truck and log trailer operated by C. M. Kirby as the agent and servant of appellant. At the conclusion of the testimony on behalf of appellee, and at the conclusion of all the testimony, appellant requested an instructed verdict in its favor. The refusal of the trial court to grant these

requests is the first assignment of error urged by appellant for reversal of the judgment.

In pursuance of this contention it is first insisted that the only conclusion warranted by the evidence, even when given its strongest probative force in favor of appellee, is that appellee was guilty of contributory negligence as a matter of law.

The collision occurred on a gravel highway known as the South Cale Road at a point about two and one-half miles south of Prescott, Arkansas. Appellee testified that on the afternoon of August 27, 1945, he was driving his light "pick-up" truck on the Blakely Mill Road which intersects the South Cale Road at the point where the collision occurred. As he approached within about 100 feet of the intersection to drive to Prescott, he saw the cab of a truck being driven by Kirby from Prescott at a fast rate of speed approaching the intersection. Another car had entered the intersection about 80 feet ahead of appellee going toward Prescott. After appellee passed some lumber stacked in the corner of a field near the intersection, and when he was about 20 feet from the intersection, he again saw the approaching truck about 100 feet up the road. He approached the intersection in second gear, stopped his truck and turned off the motor with the front end of the truck extending about 12 inches over the edge of the road Kirby was traveling. The log truck was about 60 feet away when he stopped, and there was nothing to obstruct the view of either driver at this point.

The log truck was equipped with rear dual wheels, which extended further out from the truck than the front wheels. The front wheel of the log truck missed the truck driven by appellee, but the right rear wheel caught the front part of appellee's truck knocking it around, and resulting in appellee's injuries. Appellee also testified that his brakes were in good condition and that he could have stopped his truck within 10 feet at the speed he was traveling as he approached the intersection.

John A. Davis, a Prescott merchant, testified he was walking to his car near the Blakely millyard when he stopped to talk with appellee shortly before he started toward the intersection. This witness corroborated the testimony of appellee as to the position of his truck immediately before the collision and the view of one approaching the highway. He also testified that the road was 18 feet wide where the collision occurred. The log truck stopped 50 or 60 feet from the intersection after the collision and the front end of appellee's truck was struck by the right rear dual wheel of the log truck.

It is earnestly contended by appellant that under this testimony we should hold appellee guilty of contributory negligence as a matter of law in proceeding to the edge of the highway when he could have stopped his truck at a safe distance from the road, and thereby avoided the collision. Appellants say this is especially true in view of the testimony of Kirby that the right wheels of the truck he was driving were 3 or 4 feet from the right edge of the road, and that appellee's truck struck the rear wheel of his truck. It is insisted that it must be deduced that appellee continued into the highway into the truck driven by Kirby, and that any other conclusion is contrary to the physical facts and in violation of the rule followed in *Mo. Pac. Railroad Co.* v. *Hancock,* 195 Ark. 414, 113 S. W. 2d 489.

We cannot agree with this contention. The deductions we are asked to make are dependent upon the truthfulness of the witness Kirby, who contradicted the testimony on behalf of appellee as to how the accident occurred. It was the province of the jury to consider this testimony along with all the other facts and circumstances in determining whether appellee was guilty of contributory negligence. We are unwilling to say that a driver is guilty of contributory negligence as a matter of law in stopping his truck with the front end 12 inches over the edge of a road 18 feet wide in full view of an approaching vehicle under the circumstances disclosed by the evidence on behalf of appellee.

This court has consistently held that where fair-minded men might honestly differ as to conclusions to be drawn from facts, whether controverted or incontroverted, the question at issue should go to the jury. *St. L. I. M. & S. Ry. Co. v. Fuqua,* 114 Ark. 112, 169 S. W. 786; *Coca-Cola Bottling Co. v. Shipp,* 174 Ark. 130, 297 S. W. 856; *D. F. Jones Construction Co., Inc., v. Lewis,* 193 Ark. 130, 98 S. W. 2d 874. Whether plaintiffs were guilty of contributory negligence in stopping their buggy unequipped with tail lights on the shoulder of a paved highway at night when the buggy was struck by the automobile of defendant was held to be a question for the jury, in the case of *Duckworth v. Stephens,* 182 Ark. 161, 30 S. W. 2d 840.

In a discussion of the rule announced in the case of *Coca-Cola Bottling Co. v. Shipp, supra,* Mr. Justice BUTLER, speaking for the court in the Duckworth case, said: "The most this court decided, and the rule it there laid down was that one driving an automobile at night too fast to stop within the range of his own lights in case of a collision is not guilty of negligence as a matter of law, but that each case must be considered in the light of its own peculiar state of facts and circumstances, the test being what an ordinarily prudent person would have done under circumstances as they then appeared to exist; and that whether it was negligence to leave a car parked in the nighttime without lights was also not negligence *per se* but was a circumstance to be considered with the other attendant circumstances in determining whether it was negligence or not. We have frequently held that violations of the State traffic statutes are merely evidentiary of negligence and not conclusive of the issue. *Pollock v. Hamm,* 177 Ark. 348, 6 S. W. 2d 541; *Mays v. Ritchie Gro. Co.,* 177 Ark. 35, 5 S. W. 2d 728, And in the case at bar the failure of appellees to light their buggy was a question for the jury whether under the circumstances Duckworth was, or was not, guilty of negligence in failing to discover the appellees, and whether appellees were guilty of contributory negligence in stopping the buggy without displaying tail lights. These questions were sub-

mitted to the jury under proper instructions. In these particulars the failure to attach lights to the buggy was a matter of proper consideration, but it did not relieve Duckworth from the duty of acting as a reasonably prudent person in the operation of his car and of keeping such lookout as prudence for his own safety and humanity for the safety of others could dictate. We therefore hold that the court did not err in its declaration in this regard.'' See, also, *Bean* v. *Coffee,* 169 Ark. 1052, 277 S. W. 522; *Ocker* v. *Nix,* 202 Ark. 1064, 155 S. W. 2d 58; *England* v. *White,* 202 Ark. 1155, 155 S. W. 2d 576; *Lewis* v. *Shackelford,* 203 Ark. 500, 157 S. W. 2d 509. In the instant case, the fact that appellee stopped his truck on the edge of the road did not relieve Kirby from the duty of operating the log truck and trailer in a prudent manner, or keeping a proper lookout for other vehicles using the road. Under the testimony adduced on the issue, we cannot say that appellee was guilty of contributory negligence as a matter of law, but this question was one properly to be determined by the jury.

A more serious question is presented in appellant's second contention that the proof is insufficient to show that the driver of the truck was acting as the agent or employee of appellant at the time of the collision. Appellant says that all the evidence shows that it had no supervision or control over the activities of the driver, Kirby, who was engaged as an independent contractor and for whose negligence appellant is not liable.

The evidence discloses that the Negro, Kirby, worked for appellant as a log cutter from 1940 until February, 1945, when he started driving the truck involved in the collision. He testified that he bought the truck from appellant on June 1, 1945, and executed a purchase money note for $1,850 payable at the rate of $20 each Saturday. Under the terms of this note, appellant retained title to the truck until the note was fully paid, and in the event of repossession upon default of three weekly payments, all sums paid by Kirby would be deemed a reasonable rental for the truck and trailer during the time he had

held possession. Appellant exacted no down payment at the time of the purchase, and Kirby owned no other property. While no cash payments had been made on the truck at the time of the trial, Kirby was given credit on the note for what the company owed him from time to time for hauling logs. When he bought the truck it had another driver's name and a number on it, and appellant had these painted off while the truck was in a shop.

Kirby listed the names of his log cutters in a report of his haulings to appellant each week. He paid social security and unemployment taxes on the men who cut the logs hauled by him. He also paid all expenses of operating the truck. Kirby did not know how much he owed on the truck at the time of the trial, but the records of appellant showed credits of $887.56 on the note at that time.

Appellant introduced three separate logging contracts executed by Kirby and the company, after execution of the note on June 1, 1945, and before the collision. Two of these contracts were for cutting and hauling timber from separate tracts of land owned by appellant, while the other involved timber taken from the lands of another party, and delivered to appellant. These contracts, when considered alone, indicate the relationship of Kirby as that of an independent contractor. Kirby testified that, at the time of the collision, he was hauling timber from the Wren estate under an oral agreement with appellant to deliver the pine timber at the mill for $25 per thousand. The Wren estate was to receive $14 per thousand for pine timber and $11 for the oak. Appellant did not want the oak timber and this was delivered to another mill.

Norvelle Wren testified that she made the contract for the sale of the timber with Kirby, but understood that the pine timber was to go to appellant. She also testified that appellant paid her for the stumpage as the timber was cut and hauled by Kirby.

Appellant's manager made a thorough investigation at the scene of the collision soon after it happened. He

testified that this was done at the request of both Kirby and appellee. It was agreed at the trial in January, 1946, that the state license on the truck which had been paid by appellant prior to June 1, 1945, was never transferred and that Kirby had paid no license on the truck.

It has been said in many cases that the vital test in determining whether a person employed to do certain work is an independent contractor, or a mere servant, is the control over the work which is reserved by the employer. Broadly stated the rule is that, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor. *Mississippi River Fuel Corp.* v. *Morris,* 183 Ark. 207, 35 S. W. 2d 607; *Hobbs Western Co.* v. *Carmical,* 192 Ark. 59, 91 S. W. 2d 605; *Humphries* v. *Kendall,* 195 Ark. 45, 111 S. W. 2d 492.

In 27 Am. Jur., Independent Contractors, § 60, p. 539, the general rule is stated as follows: "If a contract providing for the performance of certain work is in writing and is unambiguous, its construction is generally a question solely for the court. But where a written contract has been modified by the practice under it, or one not a party to it asserts that it does not express the real relation of the parties and produces evidence tending to show that the relation is that of master and servant, the question whether an independent contractor relationship has been created is generally for the determination of the jury. Similarly, where the nature of the relation between employer and employee depends upon the meaning of a written instrument collaterally introduced in evidence, and the effect of such instrument depends, not only upon its construction, but also upon extrinsic facts and circumstances, the inferences of fact to be drawn from the instrument must be left to the jury."

In *Wright* v. *McDaniel,* 203 Ark. 992, 159 S. W. 2d 737, this court approved the following statements of text-writers on the question: "It is frequently asserted that whether the relation of master and servant exists in a given case is usually a question of fact. Where the con-

tract is oral and the evidence is conflicting, or where the written contract had become modified by the practice under it, the question as to what relation exists is for the jury under proper instructions. If the contract is oral, and if more than one inference can fairly be drawn from the evidence, the question should go to the jury whether the relation is that of employer and independent contractor or that of master and servant. Moll, Independent Contractors and Employers Liability, p. 62, *et seq.*

"It is impossible to lay down a rule by which the status of men working and contracting together can be definitely defined in all cases as employees or independent contractors. Each case must depend on its own facts, and ordinarily no one feature of the relation is determinative, but all must be considered together. Ordinarily the question is one of fact. 31 C. J. 473, 474."

In the case of *Ellis & Lewis* v. *Warner*, 180 Ark. 53, 20 S. W. 2d 320, an injury resulted from the operation of a truck engaged in hauling gravel in the construction of a public highway. The proof disclosed that those engaged in hauling the gravel paid all operating expenses of their trucks, worked when they desired, and were paid at a stipulated price per ton for the haul. The work was done for a firm of contractors engaged in the construction of the road, and the gravel was distributed along the road as directed by the contracting firm. It was held under this state of facts that the question whether the operator of a truck engaged in hauling the gravel was an independent contractor, or a servant of the firm of contractors was for the jury.

In the case of *Lion Oil Refining Company* v. *Smith*, 199 Ark. 397, 133 S. W. 2d 895, this court held (headnote 2): "The license number of the car together with proof that appellant held the license was *prima facie* proof that the defendant was the owner, and that the driver of the car was then engaged in appellant's service." In *Terry Dairy Co.* v. *Parker*, 144 Ark. 401, 223 S. W. 6, this court, in an opinion by Justice Wood, said: "Appellant owned, and paid the license for running the motor truck. This

was *prima facie* evidence, at least, that the truck was oeing operated for appellant at the time appellee was injured. It was a question for the jury as to whether the *prima facie* case had been overcome by evidence to the contrary. *Ferris* v. *Sterling,* 214 N. Y. 249, 108 N. E. 406, Ann. Cas. 1916D 1161."

When all the facts and circumstances in the instant case are viewed in the light of the foregoing authorities, we think the question whether Kirby was acting as an employee of appellant, or an independent contractor, was one properly to be determined by the jury. He was not operating under a written contract with appellant in hauling the timber from the lands of the Wren estate at the time of the collision. The fact that Kirby was paid by the thousand for hauling the timber, paid social security and unemployment taxes on the men who cut the logs, and other circumstances in evidence tend to show that he was operating as an independent contractor. On the other hand, the fact that appellant retained title to the truck which was sold for $1,850 without a down payment, and the fact that the license number was never transferred to Kirby, together with other circumstances, would tend to indicate that the lumber company retained a degree of control over the work of Kirby which is consistent with his status as that of an employee at the time of the collision. The evidence on this issue was substantial and sufficient to support the verdict and the trial court did not err in submitting it to the jury. *Vaughn* v. *Herring,* 195 Ark. 639, 113 S. W. 2d 512.

We agree with appellant's final contention that the judgment for $15,000 is grossly excessive. The duty resting upon this court on this phase of the case is stated in *Missouri Pacific Railroad Co., Thompson, Trustee,* v. *Newton,* 205 Ark. 353, 168 S. W. 2d 812, where this court said: "This question of when a verdict is grossly excessive is one of the many perplexing problems that an appellate court has to consider. A trial jury views the plaintiff first-hand, and determines the amount of the verdict, and under our system of jurisprudence that ver-

dict should not be disturbed unless it is grossly excessive. The right of trial by jury is guaranteed by our Constitution, and by the very nature of our government, trial by jury is a bulwark against oppression and radical changes; so an appellate court should consider the case most seriously before reducing any verdict. Yet, appellate judges have a sworn duty to perform; and when, after reviewing all of the evidence in a case, the appellate court reaches the conclusion that the verdict is grossly excessive, then it is the sworn duty of the appellate court to indicate the correct amount of the verdict. Just as we would reverse a case because of errors in instructions, so, the case should be reversed if the verdict is grossly excessive. That is the recognized practice.''

Appellee is 51 years of age and has been a cripple since early childhood, walking with the aid of crutches. Appellee first consulted a physician four days after the accident when he was taken to Dr. Walter Carruthers at Little Rock, Arkansas, by his attorney. Dr. Carruthers did not testify, but the report of his examination was introduced in evidence by agreement of the parties. This report, after describing bruises to appellee's foot, shoulder and back, concludes as follows: ''Anteroposterior X-ray film was made of the pelvis including the lower lumbar spine. This film reveals a fracture on the top of the sacrum just above the top part of the sacroiliac joint, and a fracture to the transverse process of the 5th lumbar vertebra in this same area.

''Impression: As results of this examination, it is definitely shown that this man has recently received injuries as above described, both on the physical examination and by the X-ray. This will require the patient to wear a supportive brace about his pelvis and lower back for as much as three months; however, I think that his recovery will be without any permanent disability.''

Appellee consulted Dr. A. L. Buchanan about three weeks after the collision and complained of much pain. Dr. Buchanan testified that he examined appellee a few days before the trial, which was about four months after

the examination by Dr. Carruthers, and found no evidence of injuries to appellee's back or sacroiliac joint. An X-ray picture made at that time failed, to show the fractures as found by Dr. Carruthers, but did show a misplacement of the sacrum. Dr. Buchanan also testified that a fracture disclosed soon after the accident could have healed and, if so, probably would not show in the X-ray picture made by him. He also testified that appellee had fully recovered from any injuries that he might have sustained in the accident, and agreed with the prognosis of Dr. Carruthers as to permanent disability.

Appellee testified that he was still suffering pain at the time of the trial and was unable to walk without use of the brace which Dr. Carruther's advised him to wear for three months. Appellee also insists that he sustained damages in a considerable sum in loss of earnings and damages to his truck. There was no prayer in the complaint for property damages nor was there any proof offered as to the amount of damages to the truck. Instruction No. 4 given at the request of appellee reads: "You are instructed that if you find for the plaintiff, your verdict will be for such an amount of damages as you find from a preponderance of the evidence will reasonably compensate him for his physical pain and mental anguish, suffered or endured by him on account of the injuries sustained, if any; also any future physical pain and mental anguish which the evidence may show with reasonable certainty the plaintiff will suffer and endure on account of the injuries sustained by him." This was the only instruction given on the measure of damages and the jury's consideration was thus limited to the physical pain and mental anguish suffered by appellee.

A majority of the court has concluded that a judgment for any sum greater than $4,500 would be grossly excessive under the evidence in this case. If, therefore, a remittitur of $10,500 is entered by appellee within fifteen days, the judgment will be affirmed; otherwise, the judgment will be reversed and the cause remanded for a new trial.