Barber v. Jones.

5-1103                                              296 S. W. 2d 404

Opinion delivered December 17, 1956.

*Barrett, Wheatley, Smith & Deacon,* for appellant.

*Frierson, Walker & Snellgrove,* for appellee.

Ed. F. McFaddin, Associate Justice. The only question on this appeal is whether the jury verdict of $5,500 was excessive. We have concluded that it was not excessive; and a mere per curiam opinion to that effect might be sufficient. But such would neither explain our reasons to the litigants nor aid as a precedent in future cases. Hence this opinion; because an opinion has the two-fold purpose of explaining to the litigants the decision of the Court and becoming a precedent as an aid to the bench and bar.

Appellee, Grady H. Jones, brought action in the Poinsett Circuit Court against appellant, Mrs. W. R. Barber, to recover for personal injuries sustained in an automobile accident, which occurred on December 21, 1955, when a vehicle driven by appellant collided with a vehicle driven by appellee. Appellee alleged that he had sustained a badly wrenched back and that the injury ag-

gravated a pre-existing condition. He alleged physical pain, mental anguish, expenses, loss of earning capacity, and permanent injuries. The case was tried to a jury on May 14, 1956, under instructions given by the Court, to which there were no objections[1] by appellant. In answer to specific inquiries, the jury found that appellee was not negligent and that the negligence of the appellant was the proximate cause of the collision. As aforesaid, the jury verdict for appellee was $5,500; and the only question on this appeal is whether the verdict is excessive.

Dr. Barnett testified that he examined Grady Jones on December 23, 1955 and again on May 7, 1956. The first examination was about two days after the collision and Jones was at that time in pain. The doctor said:

"A. My diagnosis on the first occasion was myositis acute, due to trauma and it was not mentioned in my impression, but it was mentioned in the general write

---

[1] The Court instructed the jury, as to damages, as follows: "You are instructed that if by your findings the plaintiff, Grady Jones, is entitled to recover in this action, you may consider as his recoverable damages such a sum of money as you find from a preponderance of the evidence will reasonably compensate him for his injuries. You may take into consideration any pain and physical and mental suffering undergone by Mr. Jones, either at the time of the collision or afterwards as a result of the injuries sustained in the collision, together with any pain and mental or physical suffering which he may hereafter sustain as a result of said injuries and you may take into consideration the permanency, if any, of any bodily injury which he sustained in the collision. In addition, you may take into consideration any medical expenses or liability that Mr. Jones has incurred or may in the future be reasonably expected to be incurred by him resulting from his injuries, for medical care, hospitalization, x-rays, other expenses of this character, and in addition thereto, any wages, if any, you find from a preponderance of the evidence he has lost as a result of this accident and the probable future loss of wages, if any. If you find that the plaintiff is entitled to recover under the instruction hereto given you, and if you find that the plaintiff had a pre-existing back injury, at the time of this collision, and that the pre-existing condition was inactive or dormant or that plaintiff had fully recovered therefrom and that the plaintiff was otherwise in good physical condition, or if you further find from a preponderance of the evidence that the pre-existing injury was activated or aggravated as a result of the accident in this suit, then you are told that this plaintiff is entitled to recover for the full amount of damages which ensued as a result of this collision, notwithstanding his previous condition. In determining the damages, you are told that in so doing you are to base your estimates upon that which is established by the evidence and that which is reasonably to be inferred therefrom. You should not resort to speculation or mere surmise, but your findings must conform to that which is reasonably determinable from the evidence before you."

up that there was a residual of an old ruptured inter vertebral disc that had been treated by surgery in 1947.

Q. Do you know where that disc was located?

A. I have been unable to specifically locate the site of surgery.

Q. What is myositis?

A. It is an inflammatory process of muscle.

Q. Is pain associated with myositis?

A. Yes.

Q. What course of treatment did you prescribe for Mr. Jones?

A. Some sedation, some exercises and some heat therapy . . .

Q. Did you find from your examination a partial obliteration of the lumbar lordotic curve?

A. Yes.

Q. What would this indicate?

A. Muscle spasm.

Q. Was muscle spasm present when Grady Jones' back was first examined by you?

A. Yes, to a moderate degree.

Q. Muscle spasm is caused by what?

A. Trauma, infection, are two primary causes.

Q. Basing your answer on your examination of Grady Jones, what would you say caused the muscle spasm in his back?

A. Trauma.''

Dr. Barnett also testified that Jones had a restriction of motion anteriorally of approximately 50%; and it was the doctor's opinion that this restriction was caused by the recent trauma. As to the examination of

May 7, 1956, the doctor stated that Jones was still suffering from myositis and was still suffering pain.

It was admitted that several years prior to the present injury, Jones had suffered an injury that resulted in surgery for a ruptured inter vertebral disc in 1947 at Kennedy General Hospital in Memphis; and it was the appellant's contention that all of the present pain and suffering that Jones had was due to the original injury and not to the injuries received in the automobile collision here involved. On this point Dr. Barnett testified:

"A. At the time of the first examination I did not feel that his complaints at that time were the results of the old injury. I thought it was a result of the trauma involved two days previously.

Q. You did not see him again until May 7, 1956?

A. That is right.

Q. What was your impression on that occasion?

A. Myositis, chronic and residuals of an old ruptured inter vertebral disc.

Q. I believe you stated on that occasion he complained of numbness?

A. Yes, sir.

Q. On the second occasion?

A. Yes, sir.''

Several witnesses testified as to Jones' ability to perform full work prior to the 1955 injury here involved. He was employed at the Burton Garage in Marked Tree. Prior to the injury of December 21, 1955, Jones had been able to drive a truck and lift and unload his burdens; and had earned $45.00 a week. When he returned to work after the injuries here involved he was not able to lift any weight and had to take a cashier's job at only $25.00 a week; thus having a loss of earnings of $20.00 a week. His employer said that his old job was open for him whenever he could take it, but that Jones was un-

able to do his old work. His employer also testified that Jones was in bad condition and his physical appearance indicated that he was not able to do the work. Other witnesses also testified. One said that Jones had lost weight; that it was a hard job for him to get up and down the steps when he was going to church; and that his physical appearance had deteriorated.

That Jones expended $89.00 in drug and doctor bills; that his earnings had diminished $20.00 per week; and that he had experienced pain and suffering, are all undisputed matters. He is 37 years of age. The jury saw him and observed his demeanor on the witness stand. The jurors knew that a normal, healthy man 37 years of age has a reasonable expectancy; and that a man whose earning capacity had been reduced $20.00 a week would lose over $1,000 a year in earning capacity. Here was a man 37 years of age who had lost that amount and had experienced pain and suffering which were continuing at the time of the trial almost six months after the injury. As practical men of common sense — and that is what jurors are supposed to be — the jury returned a verdict for $5,500; and under the evidence offered we cannot say that such verdict is excessive. No new principles of law are involved. This case calls for application of the rule on verdicts reflected in some of our cases like *Phillips Motor Co.* v. *Rouse,* 202 Ark. 641, 151 S. W. 2d 994; *Mo. Pac.* v. *Newton,* 205 Ark. 353, 168 S. W. 2d 812; *Ozan Lbr. Co.* v. *Tidwell,* 210 Ark. 942, 198 S. W. 2d 182; and *Rowe* v. *Dickerson,* 226 Ark. 780, 295 S. W. 2d 305.

Affirmed.