WOOD *v.* COMBS.

5-3185                                         375 S. W. 2d 800

Opinion delivered March 2, 1964.

*Wootton, Land & Matthews,* for appellant.

*Wood, Chesnutt & Smith,* for appellee.

Ed. F. McFaddin, Associate Justice. This litigation stems from a traffic mishap on Grand Avenue in the City of Hot Springs. R. C. Combs was plaintiff below and is appellee here. Donald Wood and Ben M. Hogan & Co. were defendants below and are appellants here. Mr. Combs drove his car into the rear of a tractor-trailer unit owned by Ben M. Hogan & Co. and operated by Donald Wood. For his personal injuries and damages to his car Mr. Combs filed this action against Donald Wood and Ben M. Hogan & Co., both of whom denied liability. Trial to a jury resulted in a verdict and judgment for appellee Combs, and on this appeal appellants urge two points:

I. The Court erred in failing to direct a verdict for the defendants at the conclusion of the testimony in the case.

II. The Court erred in giving, in failing to give, and in modifying certain instructions.

I. *Refusal To Direct A Verdict.* This assignment necessitates a review of the evidence; and in so doing we must view the evidence in the light most favorable to the successful party, as is our well established rule in such cases.[1]

Ben M. Hogan & Co. had two tractor-trailer units, each 45 feet in length; and both of these units were engaged in transporting an asphalt plant through the City of Hot Springs on November 11, 1960. The first tractor-trailer unit drove entirely into Jim & Joe's Service Station property in Hot Springs for the purpose of being serviced. The second tractor-trailer unit was driven by appellant, Donald Wood. He attempted to drive into the same service station property, but because of the presence of the first unit, the trailer part of the tractor-trailer

---

[1] *Ark. P. & L.* v. *Connelly,* 185 Ark. 693, 49 S. W. 2d 387; *Mo. Pac.* v. *Hopper,* 208 Ark. 128, 185 S. W. 2d 88.

unit, driven by Donald Wood, was parked so that it extended out into Grand Avenue several feet in front of the said filling station. The appellee Combs was driving west on Grand Avenue on his proper side of the street and drove into the said parked tractor-trailer unit. Grand Avenue runs east and west through Hot Springs. It is a four-lane highway with a median divider so that on the north side there are two lanes going west and on the south side there are two lanes going east. Jim & Joe's Service Station is on the north side of Grand Avenue. Thus the parked trailer unit driven by Donald Wood was partially in the service station, partially on the driveway approach to the service station, and partially extending into Grand Avenue a distance of nine feet.[2]

On the morning in question Mr. Combs was driving his car west on Grand Avenue in the extreme north, or outside lane, and his speed was about 25 miles an hour. Just before he reached the entrance to Jim & Joe's Service Station, one or more cars overtook and passed Mr. Combs on his left, thus forcing him to remain in the north or outside lane. Then he discovered the empty end of the trailer unit extending out into Grand Avenue, directly in his path. At 25 miles an hour he was travelling approximately 37 feet per second. The trailer unit was a "lowboy";[3] and the rear end of the trailer extending out into Grand Avenue was empty and was only about three feet above the highway. Mr. Combs testified that he was keeping a lookout but was unable to stop before striking the trailer unit. It was stipulated that the ordinance of Hot Springs provided for parallel parking on Grand Avenue and also provided that no vehicle should be parked on a sidewalk or in front of a driveway.

Thus, with the tractor-trailer unit parked at an angle in Grand Avenue, and over what was the sidewalk, and

---

[2] There was some dispute as to the distance that the trailer extended into Grand Avenue. Plaintiff Combs said nine feet; another witness said six or eight feet; and another witness said four or four and one half feet; the jury could have found the greater distance of nine feet; and we must so consider it on this appeal.

[3] The word lowboy is defined in Webster's New 3rd International Dictionary as "lowboy vehicle" and one "having a bed only a few inches above the roadway."

in front of what was the driveway to Jim & Joe's Service Station, there was evidence that the defendants were violating the ordinance of Hot Springs; and the violation of a law or ordinance is evidence of negligence. *Terry Dairy Co.* v. *Nalley*, 146 Ark. 448, 225 S. W. 887; *Mays* v. *Ritchie Groc. Co.*, 177 Ark. 35, 5 S. W. 2d 728; *Ozan Lbr. Co.* v. *Tidwell*, 210 Ark. 942, 198 S. W. 2d 182.

The defendants offered testimony that Mr. Combs' visibility was impaired because his windshield was either frosted over on the outside or covered with moisture on the inside; but such evidence was disputed. The defendants also insisted below, and vigorously urge here, that for Mr. Combs to drive into a parked trailer was a far greater act of negligence than was the parking of the trailer; and on this point the appellants also insist that they were entitled to an instructed verdict. The comparative negligence statute applicable at the time of this case was Act No. 296 of 1957, which, in effect, provided that a plaintiff could not recover if his negligence was equal to or greater than the negligence of the defendant.

From what we have detailed of the evidence, it is clear that Mr. Combs made a case for the jury, unless this Court is prepared to hold, as a matter of law, that Mr. Combs' negligence exceeded the negligence of the defendants. After carefully reviewing the record we conclude that a question was made for the jury, both on the issue of the defendants' negligence and the plaintiff's contributory negligence. There are some cases in which we have held, as a matter of law, that the plaintiff's negligence—in that particular case—was greater than the negligence of the defendant; but the usual rule is that the matters of negligence and contributory negligence are issues for the jury. In *Ozan Lumber Co.* v. *Tidwell,* 210 Ark. 942, 198 S. W. 2d 182, we said:

"This court has consistently held that where fair-minded men might honestly differ as to conclusions to be drawn from facts, whether controverted or incontroverted, the question at issue should go to the jury. *St. L. I. M. & S. Ry. Co.* v. *Fuqua,* 114 Ark. 112, 169 S. W.

786; *Coca-Cola Bottling Co.* v. *Shipp,* 174 Ark. 130, 297 S. W. 856; *D. F. Jones Construction Co., Inc.,* v. *Lewis,* 193 Ark. 130, 98 S. W. 2d 874. Whether plaintiffs were guilty of contributory negligence in stopping their buggy unequipped with tail lights on the shoulder of a paved highway at night when the buggy was struck by the automobile of defendant was held to be a question for the jury, in the case of *Duckworth* v. *Stephens,* 182 Ark. 161, 30 S. W. 2d 840.''

We have held in one or more cases that, under the facts in that particular case, a motorist who drove his car into a train standing still at a crossing was guilty of a greater amount of negligence than was the railroad company, as a matter of law. But we have also held that a question of fact was made for the jury on negligence and contributory negligence when a motorist drove his car into a train standing still on the crossing. These cases are reviewed in *Hawkins* v. *Mo. Pac.,* 217 Ark. 42, 228 S. W. 2d 642; and that case shows the line of delineation as to whether, under the facts and circumstances in each case, reasonable men might differ as to which party was guilty of the greater degree of negligence. In the case at bar we conclude a question was made for the jury.

II. *Instructions.* Appellants insist that the Trial Court ruled erroneously regarding each of five instructions. The assignments related to: (a) giving Court's Instruction No. 6; (b) refusing to give defendants' Instructions Nos. 10 and 13; and (c) modifying defendants' Instructions Nos. 12 and 14; but we find no error in any of the Court's rulings.

The Court's Instruction No. 6 reads:

''What do we mean by the term 'proximate cause'? It is a cause which in its natural and continuous sequence —unbroken by any new efficient intervening cause—produces an event, and without which the event would not have occurred. So, in order to warrant a finding that negligence is a proximate cause of a collision, it must appear from the evidence that the collision was a natural and probable consequence of the negligence and ought to

have been foreseen by a person of ordinary prudence as likely to occur under the circumstances.''

The defendants' specific objection to this instruction was this:

''. . . in the second paragraph thereof the affirmative statement is upon the finding that negligence is a proximate cause of a collision, when the finding should have been upon some act or omission of the parties constituting negligence, and for that reason is misleading to the Jury.''

The Trial Court gave eleven instructions on its own motion, and these covered such matters as negligence, contributory negligence, ordinary care, proximate cause, preponderance of the evidence, burden of proof, the duty of the jury to weigh the evidence, etc. This Instruction No. 6 was one of such instructions, and when we consider Instruction No. 6 in its context with the other instructions, we find no merit to appellants' objection.

The Trial Court refused to give defendants' Instruction No. 10, which reads as follows:

''You are instructed that if you find from a preponderance of the evidence that at the time of the accident herein sued upon, parking was permitted upon Grand Avenue, and if you further find from a preponderance of the evidence that the portion of the defendant's truck extending out into Grand Avenue did not extend further out into the street than would a vehicle parked in the usual and customary manner at the curb, then you are instructed that as to the issues between plaintiff and defendant, it would be the same as if the vehicle had been parked on Grand Avenue in a normal and customary manner.''

The Court was correct in refusing this instruction because it was argumentative and was a comment on the weight of the evidence. In the defendants' Instruction No. 9 the Court had told the jury there could be parallel parking on Grand Avenue; then in defendants' Instruction No. 11 the Court told the jury that no vehicle with a

width greater than eight feet could be on the highway except by special permit. To sandwich in this Instruction No. 10 between the two instructions would be in effect to tell the jury that if the trailer as parked extended out into Grand Avenue a distance of less than eight feet it would be the same as if it had been parked parallel. This was argumentative. If an automobile had been parked on Grand Avenue parallel to the curb, as required by the ordinance, the car would not have been in front of the driveway of the filling station as was this trailer. Furthermore, a parked car would have been higher than three feet and therefore more visible than was the empty portion of this lowboy.

The Court was also correct in refusing defendants' Instruction No. 13, which read:

"You are instructed that the Arkansas law provides as follows: 'No person shall drive any motor vehicle with any sign, poster or other non-transparent material upon the front windshield, side wings, side or rear windows of such vehicle other than a certificate or other paper required to be so displayed by law.' If you find from a preponderance of the evidence that all or a portion of the windshield of the car driven by the plaintiff was obscured by a non-transparent material such as ice or frost then the driving of the vehicle under these circumstances would be a violation of the above quoted statute, which may be taken into consideration by you, along with all of the other evidence in the case in determining whether or not the plaintiff, R. C. Combs, was guilty of negligence."

There was no evidence that the plaintiff had any "sign, poster, or other non-transparent material" on the windshield. What the defendants had reference to in this instruction, was the testimony by some of the defendants' witnesses that the windshield of Mr. Combs' car was either partially covered over by frost[4] on the outside, or

---

[4] In 42 A.L.R. 2d, page 13, there is an exhaustive annotation, entitled, "Liability for motor vehicle accident when vision of driver is obscured by smoke, dust, atmospheric condition, or unclean windshield."

was partially clouded by moisture on the inside. But the instruction as offered was framed from Ark. Stat. Ann. § 75-730 (Repl. 1957), which section does not relate to frost or moisture but to "stickers." See *Kirkley* v. *Portland Elec. Co.* (Ore.), 298 P. 237.

Defendants complain because the Court modified two of their instructions by deleting certain language in each one. These are rather lengthy and we will not burden this opinion by copying them. It is sufficient to say that we find that the Court was not in error. The jury had been instructed as to the duty of the appellee to keep a lookout and to drive with care and caution; and these matters having been covered in other instructions, the Court did not have to repeat such items.

Finding no error, the judgment is affirmed.